# Adler v. Martin.

*Damages for Death in Automobile Collision.*

(Decided June 13, 1912.  59 South. 597.)

1. *Municipal Corporation; Injury to Pedestrian; Willful and Wanton Negligence.*—The evidence examined and held to show that the chauffeur of defendant did not willfully run the automobile against plaintiff's decedent, though he may have wantonly done so, and hence, plaintiff was not entitled to recover if his intestate was guilty of contributory negligence.

2. *Same; Contributory Negligence; Jury Question.*—Where special pleas of contributory negligence were interposed to certain counts claiming damages for the death of plaintiff's intestate from being struck by an automobile, the general affirmative charge to find against plaintiff on those counts was properly refused, although all the facts alleged in the pleas were proven, as the question of whether such contributory negligence was the proximate cause of the injury, remained for the jury to decide.

3. *Same; Negligence per se.*—A pedestrian is not guilty of negligence per se in failing to first look up and down a street for

[Adler v. Martin.]

approaching vehicles before attempting to cross; whether or not such failure is negligence at all is a question for the jury on the particular facts in the case.

4. *Same; Instructions.*—Charges on contributory negligence of plaintiff's intestate were properly refused because they did not postulate a finding of the essential facts relied on in the pleas of contributory negligence as a basis for the verdict, and were hence, confusing and misleading.

5. *Same; Jury Question.*—On the evidence in this case it was a question for the jury whether the contributory negligence of plaintiff's intestate was the proximate cause of his injury and death.

6. *Same; Ordinances; Constitutionality.*—Notwithstanding section 6324, Code 1907, forbids the running of automobiles on the roads and highways of the state at a speed of more than eight miles an hour, a municipal ordinance limiting the speed of automobiles to ten miles an hour is not violative of section 89, Constitution 1901, since the ordinance does not undertake to license driving an automobile at a greater rate of speed than eight miles an hour.

7. *Death; Punitive Damages; Evidence.*—Where the action was for the death of a person from being struck by a car and the fact of the driver's skill was not in issue, and the inquiry was not injected by plaintiff's examination, it was not competent in mitigation of damages to show that the chauffeur was a careful and competent driver.

8. *Evidence; Judicial Notice; Municipal Ordinances.*—The courts do not presume the existence of a municipal ordinance or the time it is in force, and hence, counts based upon the infraction of a municipal ordinance, and that the ordinance was in force at the time of the accident, are not sustained unless the facts therein alleged are shown by competent evidence.

9. *Trial; Failure of Proof; Waiver.*—A failure to call the court's attention to a failure of proof will not amount to a waiver of the necessity of such proof, where the affirmative charge is requested for defendant as to such count, although such failure of proof is not specified as ground therefor.

(Simpson, Mayfield and Sayre, JJ., dissent in part.)

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. O. LANE.

Action by E. L. Martin, as administrator, against S. M. Adler. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Plaintiff's intestate, a man 29 years of age, was killed about 10 a. m. on May 7, 1910, on Twenty-First Street Bridge, in the city of Birmingham, by an automobile belonging to the defendant, and driven by defendant's

servant.   Counts 1 and 4 of the complaint charge that defendant's servant in charge of the machine negligently caused or allowed it to be run upon and against intestate, thereby causing his death.   Count 2 charges that said servant willfully and wantonly drove and propelled the machine upon and against the body of intestate, thereby causing his death.   Count 3 imputes intestate's death to the unlawful act of defendant's servant in then and there running said machine at a greater rate of speed than 10 miles per hour, in violation of section 16 of the City Code of Birmingham, which is set out in full.   Count 5 imputes intestate's death to the unlawful act of defendant's servant in then and there running said machine without giving signals at short intervals, either by a bell, horn, or whistle, in violation of section 16 of the City Code of Birmingham, which is set out in full as follows:   "No automobile, motor car, motor carriage, or other vehicle of like kind or description, whether propelled by steam, gasoline, electricity or other power, shall be run within the corporate limits of the city of Birmingham at a greater rate of speed than ten miles per hour, or shall be run over any street or crossing at a greater rate of speed than six miles per hour, or shall be run or used in the night without having a headlight or lamps, or shall be run at any time without signals are given at short intervals by bell, horn or whistle."

Defendant pleaded the general issue to the whole complaint, and special pleas 2 and 3 to counts 1, 3, 4, and 5 of the complaint, which are as follows:

(2) "Contributory negligence in this:   Said intestate was struck by defendant's automobile on the bridge or viaduct in the city of Birmingham, Alabama, known as the Twenty-First Street Bridge.   Said bridge or viaduct consists of a roadway about, to wit, 25 feet wide,

for the use of vehicles and travelers on horseback, on either side of which are footways about to-wit, 4 feet wide, for the use of pedestrians; that said viaduct or bridge constitutes part of the principal line of travel for vehicles between the south side of the city of Birmingham, including the residential portion of said city, known as South Highlands, and the principal business section of said city of Birmingham; that as many as, to-wit, 1,000 automobiles daily cross said bridge or viaduct, using the portion thereof herein referred to as the roadway; that large numbers of other vehicles also daily pass over the roadway portion of said bridge or viaduct; that plaintiff's intestate stepped from one of the pathways for the use of pedestrians onto said roadway for the use of vehicles, and undertook to pass across, or partially across, said roadway without looking in either direction for approaching vehicles. Defendant further says that it was not usual or customary for pedestrians to cross said roadway, and that plaintiff's intestate's negligence in undertaking to cross said roadway without looking out for approaching vehicles proximately contributed to his being struck by defendant's automobile, and of his sustaining the injuries which resulted in his death."

(3) "Contributory negligence in this: In that he negligently undertook to walk across or along a driveway constituting a part of a bridge or viaduct, known as the Twenty-First Street Bridge, in the city of Birmingham, Alabama, designed and used as a roadway for vehicles, without looking for approaching vehicles before stepping into said driveway, and without keeping a lookout for approaching vehicles after getting into said driveway, which negligence on the part of plaintiff's intestate proximately contributed to cause defend-

ant's automobile to strike him and inflict the injuries from which he died."

Demurrers to the various counts of the complaint, and also to the special pleas, were overruled, and, on issue joined, the jury found a verdict for the plaintiff for $20,000. The court gave the following charges for the defendant:

(L) "I charge that, if you believe from the evidence that Lonnie Bell, the driver of defendant's automobile, was using reasonable care to look out for any persons who might get in the way of said automobile just at and prior to the time plaintiff's intestate was struck, and if you believe further that plaintiff's intestate stepped from the walkway of said bridge in front of the said moving automobile, and that the said Lonnie Bell did not have time, after said intestate stepped in the way of said automobile, to avoid hitting him, by the use of any reasonable means, then you cannot find a verdict for the plaintiff."

(9) "One using a public highway must exercise reasonable care in looking out for vehicles also using such highway. The failure to use such care is negligence; and, if you believe from the evidence that the deceased was guilty of contributory negligence proximately causing his injuries and death, plaintiff cannot recover for any simple negligence of the driver of the automobile."

(8) "The plaintiff would have a right to recover on account of the failure of the driver to blow the horn of the automobile, if you believe from the evidence there was such failure, under the counts of the complaint setting up such failure, only in the event that you are further reasonably satisfied from the evidence that such failure proximately caused the injuries of the deceased; and plaintiff could not recover on account of such failure in any event, if you further find from the evi-

dence that plaintiff was guilty of contributory negligence as set up in defendant's pleas numbered 2 or 3, or either of them."

(G) "I charge that, if you find from the evidence that Lonnie Bell, at and just prior to the time defendant's automobile struck plaintiff's intestate, was negligent in not keeping a proper lookout for persons who might get in the way of said automobile, and if you find further that plaintiff's intestate was also guilty of negligence, just at and prior to the time he was injured, in not keeping a lookout for vehicles which might strike him, and such negligence proximately contributed to cause his injuries, then such contributory negligence on the part of plaintiff's intestate is a good defense in this cause, and you cannot find a verdict for plaintiff because of a mere failure of the said Lonnie Bell to discover plaintiff's intestate."

(K) "I charge you that, if you believe from the evidence that Lonnie Bell, at and shortly prior to the time plaintiff's intestate was struck, was operating defendant's automobile in a reasonably careful and prudent manner, and was using all reasonable means to look out for persons who might get in the way of said automobile, and to avoid hitting any one, and, if you believe further that said Lonnie Bell, by the use of such reasonable care, did not discover, and could not have discovered or seen, that plaintiff's intestate was leaving the walkway on said bridge, or was about to leave same and place himself in danger of being struck by said automobile, in time to avoid hitting said intestate, then you cannot find a verdict for the plaintiff."

(A) "I charge you, gentlemen, of the jury, that, if you believe from the evidence that Lonnie Bell, the driver of defendant's automobile, was using reasonable care to look out for any persons who might get in the

way of said automobile just at and prior to the time plaintiff's intestate was struck, and if you believe fur ther that plaintiff's intestate stepped from the walk way of said bridge in front of said moving automobile, and that the said Lonnie Bell did not have time, after said intestate stepped in the way of said automobile, to avoid hitting him, by the use of all the means at his command, then you cannot find a verdict for the plaintiff."

The following charges were refused to the defendant:

Charges 1 to 5 were affirmative charges as to the whole complaint and the various counts.

(B) "I charge you that, if plaintiff's intestate, at the time he stepped from the walkway upon the bridge and started to cross the part of said bridge used by vehicles, could have seen the automobile which struck him, had he looked to see if any vehicles were approaching, and could have stopped, or stepped out of the way, in time to have avoided being struck by said automobile, and if said intestate, under these circumstances, failed to look for any such approaching vehicle, then he was guilty of negligence which contributed proximately to cause his injuries; and, if you believe from the evidence that such were the facts, then you must find a verdict for the defendant."

(C) "I charge you that a person driving or operating an automobile upon a public highway has the right to assume that pedestrians will not move themselves from a place of safety and place themselves in danger by crossing, or attempting to cross, in front of such moving automobile, where there is nothing to obstruct their view of automobiles, or to prevent them from seeing it as it approaches."

(E) "I charge you that, under the evidence in this case, Lonnie Bell, the chauffeur, who was driving or operating defendant's car at and just prior to the time plaintiff's intestate was struck and injured, had a right to presume that plaintiff's intestate would not leave the walkway on said bridge provided for pedestrians, and subject himself to the danger of crossing in front of said moving automobile."

(F) "I charge you that plaintiff's intestate, under the evidence in this case, should have looked to see if any vehicle or vehicles were approaching, so as to make it dangerous for him to cross, or attempt to cross, the part of said bridge used by said vehicle before he attempted to cross from the walkway on said bridge, where he was in a place of safety, so far as said vehicles were concerned; and if you believe from the evidence in this case that said intestate should have seen the automobile which struck him in time to have avoided injury, had he looked to see if any vehicles were coming, before stepping from said walkway and if you further believe that said intestate did not look to see if any such vehicles were approaching, then you must find said intestate was guilty of negligence which contributed proximately to cause the injuries complained of, and must find a verdict for defendant."

(I) "I charge you that, if you believe from the evidence that plaintiff's intestate was guilty of any negligence, however slight that negligence on his part may have been, which contributed in any degree proximately to cause the injuries complained of, then you must find a verdict for the defendant."

(J) "If there is any individual juror who is reasonably satisfied from all the evidence that plaintiff's intestate was guilty of any negligence which contributed proximately to his own injury and death, as charged in

any one or more of defendant's pleas of contributory negligence, then, gentlemen of the jury, the court charges you that you cannot find a verdict for plaintiff."

(M) "I charge you that, even though you find from the evidence that Lonnie Bell, by the use of reasonable care, could have avoided hitting plaintiff's intestate, if you further find from the evidence that plaintiff's intestate, by the use of reasonable care—that is, such care as an ordinarily prudent man would use—could also have avoided being struck by said automobile, then you cannot find a verdict for plaintiff.".

There is no refused charge A in the record; but charge H is evidently referred to, and is as follows: "If you believe from the evidence that plaintiff's intestate was guilty of negligence, I charge you that, however slight that negligence on his part may have been, if it was such that but for that negligence the accident could not have happened, the plaintiff cannot recover."

PERCY, BENNERS & BURR, and V. J. NESBITT, for appellant. The 3rd and 5th counts charge the violation of the speed ordinance as the act of negligence, and as there was a failure of proof as to the ordinance, and the time it went into effect, defendant was entitled to the affirmative charge thereon as to those counts.—*Excelsior S. L. Co. v. Lomax*, 166 Ala. 612; McQuillan's Munic. Ord. sec. 340. The statute requires that the speed of an automobile shall not exceed eight miles an hour, and the ordinances fixes the speed at not exceeding ten miles an hour, and hence, the ordinance must give way to the statute.—Sec. 6324, Code 1907; Sec. 89, Constitution 1901; *Hewlett v. Camp*, 115 Ala. 499; *Costello v. State*, 108 Ala. 45; 91 N. E. 206; 190 N. Y. 315; 180 N. Y. 139; McQuillan, sec. 16. The court was in

error in charging the jury that it is not the duty of a
pedestrian in attempting to cross a street to look up
and down the street to see if an automobile is coming,
and was also in error in refusing to charge that a driver
of an automobile may presume that a pedestrian will
not put himself in danger by attempting to cross in front
of a machine which he sees or can see by looking.—
45 N. Y. 191; 54 N. Y. 242; 49 Pac. 185; 8 C. B. 568;
153 Pa. St. 278; 116 Ind. 477; 122 Ind. 362; 94 Ia. 176;
105 Mich. 298; 66 Vt. 358; 167 Mass. 199; 125 Ky. 152;
63 Atl. 68.  There is a difference in crossing a street
without stopping and looking, and in attempting to
cross the driveway portion of a viaduct.  Under the evi-
dence in this case, it was contributory negligence on
the part of the pedestrian to leave the walkway on the
viaduct, and go upon the driveway thereof without look-
ing, all of which proved the averments of the 2nd plea.
—*B. R. L. & P. Co. v. Oldham,* 141 Ala. 195; *Anniston
E. & G. Co. v. Rosen,* 159 Ala. 195.  The defendant
should have been permitted to show that the driver
was a careful one, and competent.—73 S. W. 542; 12
Wall. 390; 131 Fed. 562; Babbett on Motor Vehicles,
sec. 196.  There was an utter failure of proof indica-
tive of consciousness on the driver's part of the likeli-
hood of the accident in question, or any similar one,
and of a consequent conscious indifference to the use
of preventive methods.—*Anniston Electric Co. v. Rosen,*
159 Ala. 195; *Ga. Pac. Ry. Co. v. Ross,* 100 Ala. 490;
*Johnson v. Birmingham Ry., Lt. & P. Co.,* 149 Ala. 529;
*Mizzel v. Southern Ry. Co.,* 132 Ala. 504; *Peters v.
Southern Ry. Co.,* 135 Ala. 533; *Nashville, Chattanooga
& St. Louis Ry. Co. v. Harris,* 142 Ala. 249; *L. & N. R.
R. Co. v. Brown,* 121 Ala. 221; *Mobile, Jackson, etc.,
R. R. Co. v. Smith,* 153 Ala. 127; *M. & C. R. R. Co. v.
Martin,* 117 Ala. 367; *Central of Ga. Ry. v. Blackman,*

[Adler v. Martin.]

53 South. 905; *Ala. Central R. R. Co. v. Humphries,*
53 South. 1013.

VASSAR L. ALLEN, for appellee.  The objection made
to the want of proof of the ordinance and the time of its
effect, in the court below, was too vague and indefinite
to avail appellant anything here.—*Buford v. Little,* 159
Ala. 300; *B. R. L. & P. Co. v. Taylor,* 152 Ala. 105;
*Peck v. Ashurst,* 108 Ala. 429; *Watson v. Cain,* 44
South. 610; *Rogers v. Ritter,* 12 Wall. 317.  The ordi-
nance was not void or unconstitutional.—*M. & A. v.
Allair,* 14 Ala. 400; *Talladega v. Fitzpatrick,* 133 Ala.
613; 22 Cyc. 69; Berry's Law of Automobiles, sec. 74.
There was no error in the charge of the court as to the
duty of pedestrians in stopping and  looking before
crossing the street.—*Corona C. & I. Co. v. White,* 158
Ala. 627.  The court properly declined to give the af-
firmative charge for appellant upon the willful and
wanton counts.—*C. of Ga. v. Partridge,* 136 Ala. 596;
*B. R. L. & P. Co. v. Williams,* 158 Ala. 382; *Montgom-
ery St. Ry. v. Lewis,* 148 Ala. 142; *M. J. & K. C. R. R.
Co. v. Smith,* 153 Ala. 127; *B. R. L. & P. Co. v. Lan-
drum,* 153 Ala. 192; *Montgomery St. Ry. v. Rice,* 144
Ala. 610.  The damages were purely punitive, and with-
in the sound discretion of the jury under proper in-
structions from the court.

SOMERVILLE, J.—As illustrative of the manner
and circumstances of intestate's death, the testimony
of plaintiff's principal witness, E. H. Coxe, shows the
following salient facts:  Witness was crossing the
bridge in an automobile going south, and first saw in-
testate and defendant's automobile when witness was
75 or 100 feet from the first large truss on the north
side.  Intestate stepped out from the eastern sidewalk,

between the uprights and the girder, and was walking diagonally across the bridge in the same general direction that defendant's automobile was going. When intestate left the sidewalk, he was 30 to 50 feet from defendant's machine, and about the same distance from witness in the opposite direction. The machine was approaching, going north, at not exceeding 12 miles an hour, and intestate was walking very leisurely, paying no attention to where he was going or to his surroundings, and apparently walking towards a buggy or other vehicle on the other side of the bridge. Neither intestate nor the chauffeur seemed to be paying any attention to the other; and neither one seemd to make any effort to get out of the way until just the moment they struck. There was no obstruction between the automobile and intestate during the time witness saw them. The chauffeur was looking straight ahead, and witness noticed no signals given by him. The collision occurred at about three to five feet from the curb or edge of the sidewalk. When the automobile was right on intestate, the chauffeur used every ordinary effort to stop—shut off his engine and applied the brakes—and then made a sharp turn to the right, as if trying to miss the man. All this happened quickly, in the space of a few seconds.

Lonnie Bell, the chauffeur, testified as a witness for defendant. His narrative, though somewhat confused, is substantially as follows: He was driving the automobile to town—northward across the bridge—and had just passed a buggy or wagon in front of him by circling to the left of it, and had turned his machine back in near to the curb on the right-hand side of the bridge. There was nothing between him and intestate, whom he saw step out from sidewalk and go diagonally across the street. When he first saw intestate, he was within four feet of him, and the machine struck

him about three feet from the curb. Witness was look-
ing straight ahead. He did not have time to blow his
horn. He did the best he could, but could not stop
the machine after intestate stepped out in front of it.
He turned a little to the left, when he saw he was going
to strike the man, and stopped almost at the same time
he made the turn, in about the length of the car. He
put on the emergency brake; and, while doing this and
stopping the car, the driver cannot at the same time
blow his horn.

It seems, without dispute, that the bridge is a thor-
oughfare for automobiles, 600 to 1,000 of them passing
over it daily; and that pedestrians cross on the side-
walks, and seldom in crossing pass from one sidewalk
over to the other, for which there is ordinarily no need
or occasion.

Other witnesses testified on both sides; but their tes-
timony adds nothing to the foregoing statements in
elucidation of the alleged willful or wanton character
of the chauffeur's conduct, for which purpose we have
quoted from the testimony of the two chief witnesses.

In such cases as this, it is always a matter of diffi-
culty, and frequently of doubt, to determine whether
or not the evidence fairly permits any reasonable infer-
ence of willfulness or wantonness on the part of the
actor whose conduct is in question. Some of the ques-
tions presented by this appeal demand that we review
and sit in judgment upon the evidence pertinent to this
inquiry. This we have undertaken to do, and we can-
not escape the conclusion that, however negligent de-
fendant's servant may have been, and whether the jury
believed the narrative of the one witness or the other,
there is nothing in the evidence from which it may be
fairly inferred that this servant *willfully*—that is, in-
tentionally and designedly—ran this car upon this un-

fortunate intestate. The complaint is that the act was *willfully and wantonly* done, not willfully *or* wantonly; and while in legal effect, for some purposes, wantonness is the equivalent of willfulness (*M. J. & K. R. Co. v. Smith,* 146 Ala. 312, 40 South. 763; *Montgomery St. Ry. Co. v. Lewis,* 148 Ala. 134, 142, 41 South. 736), yet there is a difference in the two mental attitudes thus described, and the proof that may suffice to show the one may fall short of showing the other.—*B. R. L. & P. Co. v. Ryan,* 148 Ala. 69, 76, 41 South. 616. This distinction is clearly indicated by the definitions given in *B. R. & Electric Co. v. Bowers,* 110 Ala. 328, 20 South. 345; *L. & N. R. Co. v. Anchors,* 114 Ala. 492, 498, 22 South. 279, 62 Am. St. Rep. 116, *B. R. & E. Co. v. Pinckard,* 124 Ala. 375, 26 South. 880, *Peters v. So. Ry. Co.,* 135 Ala. 533, 536, 33 South. 332, *M. & C. R. Co. v. Martin,* 117 Ala. 367, 23 South. 231, and numerous other cases. "A partial employment of available means, evincing some degree of care, is not sufficient" to disprove wanton negligence.—*B. R. & E. Co. v. Pinckard,* 124 Ala. 375, 26 South. 881. But such efforts might, in particular cases, be regarded as conclusive of the absence of an *intention* to injure.

Accepting Coxe's estimates as correct, if the automobile was 50 feet from intestate when he stepped down from the curbing, it would have reached and struck him in three seconds; or, if the distance was only 30 feet, the collision would have occurred in less than two seconds, since an automobile going 12 miles an hour moves 17.3 feet per second. And, even if the chauffeur saw intestate leave the sidewalk, as he says he did, he might well have assumed that intestate would proceed with some caution, and would not step in front of the machine; and, if Coxe's testimony is true, he evidently did so assume, and did not keep intestate in view, but

looked straight ahead. Thus it happened that, when the chauffeur saw intestate stepping in the way of the machine, it was right upon him, and escape was impossible. The testimony of both Coxe and the chauffeur is positive, and without dispute, that just before the collision the chauffeur did what he could to stop the machine and avoid striking the man.

If the failure of the chauffeur to observe the course of intestate after he left the sidewalk, and to be prepared to avoid a collision with him, if he should heedlessly proceed into the line of danger, might support the inference that he was *wantonly* indifferent to such a catastrophe, nevertheless it cannot, in view of all the evidence, support the inference that he intentionally, i. e., purposely and designedly, ran his car against intestate.

It results from this view of the evidence that defendant was entitled to the general affirmative charge as to count 2, and its refusal was erroneous.

Counts 3 and 5 of the complaint are grounded on defendant's alleged violations of a municipal ordinance, known as section 16 of the Code of the City of Birmingham. In order to recover under these counts, it was, of course, necessary for plaintiff to show that this ordinance was in force at the time intestate was injured.— *Excelsior Laundry Co. v. Lomax,* 166 Ala. 612, 52 South. 347. The bill of exceptions shows no more than that plaintiff "offered in evidence section 16 of the City Code of Birmingham, which is as follows," etc. Under the authority last quoted, we cannot assume that this ordinance was in force at any time prior to the date of the trial; and hence, with an essential element of proof lacking, plaintiff was not entitled to recover under either of these counts. Defendant was therefore entitled to the general affirmative charge as to each of them.

We have considered appellee's earnest insistence that his omission of this proof was waived by defendant's conduct throughout the trial, and by his failure to specify the omission as a ground for requesting the affirmative charge. It is true that a matter not expressly proved may be so dealt with by the opposite party as to in effect concede its existence; it not being in any way disputed.—*B. R., L. & P. Co. v. Taylor,* 152 Ala. 105, 44 South. 580. But in that case it was expressly stated that the evidence plainly showed the fact in question. We cannot say that the bill of exceptions in this case shows that the ordinance was in force previous to the injury or that the conduct of defendant, or the course of the trial, in any way conceded that fact, or dispensed with its actual proof. The admission of the ordinance in evidence was objected to by defendant; and his examination of witnesses on the questions of speed and warning signals were relevant to the general question of negligence under other counts of the complaint. The case here is not a case of variance merely, but the failure of necessary proof. In such a case, and even in the case of a material variance, it is not necessary, under the practice prevailing in this state, for the complaining party to call the trial court's attention to the omission, or to the variance, otherwise than by a request for the affirmative charge.

The case of *Watson v. Cain,* 171 Ala. 151, 54 South. 610, is not in conflict with this practice; for it only holds that the appellee cannot avoid a reversal on account of an erroneous ruling in his favor, on the ground that a variance would have entitled him to the general charge; he not having requested such a charge. The writer is disposed to condemn the practice referred to as being unjust and unfair, and provocative of needless expense and delay in the attainment of justice. But the

practice is established, and the remedy, it seems, must be applied by the Legislature.

Defendant's request for affirmative charges on other counts of the complaint were properly refused. If it were conceded that every fact alleged in his special pleas was proved, the issue of proximate cause was still a question for the jury to determine.

The demurrers to count 3 were properly overruled. The Birmingham ordinance, limiting the speed of automobiles to a speed of ten miles per hour, does not undertake to *license* them to run at a speed in excess of eight miles per hour, and is therefore not in conflict with section 6324 of the Alabama Code, which forbids their running on the roads or highways of the state at a speed of more than eight miles per hour. It is merely a matter of policy whether a municipality may choose to punish those who exceed any specified rate of speed; and, the state regulation not forbidding, municipalities may, with respect to their own streets, prescribe a rate of speed either lower or higher than that fixed by the state, so far, at least, as their own punitive action is concerned. This ordinance, we repeat, is not in derogation of the state statute, and does not violate section 89 of the Constitution.

Defendant's offer to show that his chauffeur, Lonnie Bell, was a careful and competent automobile driver was properly rejected. It is urged that the fact of his competency was admissible, not as tending to show the exercise of *skill* or care on this occasion, but in mitigation of damages; this being a punitive action. The pleadings, however, do not put in issue the fact of the driver's skill or lack of skill; nor has plaintiff injected the issue into the case by merely inquiring as to the chauffeur's previous employers; and we think its bearing on the general question of punitive damages is

too remote to justify its admission in evidence. The authorities cited by appellant in support of this contention are not in point. The punishment intended by the homicide act is for the result in the particular case, and this cannot be properly affected by any consideration of a servant's general ability to have avoided the result, when he has not in fact done so. The master is equally liable, there being no question as to his special duty to fellow servants, whether his servant be in general skillful or unskillful.—*Smith's Adm'x v. Middleton*, 112 Ky. 588, 66 S. W. 388, 56 L. R. A. 484, 99 Am. St. Rep. 308; 26 Cyc. 1574 (111), and cases cited in note 94.

We do not mean to say it is not a gross violation of his duty to others who use the public highways for the owner or custodian of an automobile to intrust its operation thereon to a servant who has not the requisite skill and training to handle it efficiently and safely. But that issue was not presented in this case.

In defining the nature and degree of the care required of pedestrians in crossing the streets of cities, the trial court instructed the jury, ex mero motu, as follows: *"Now, it is not the duty, however, of a pedestrian, when he goes to cross a street, to look up and down the street to see if any automobile is coming.* He may assume that if a vehicle is coming, approaching, that it will approach in such manner and under such control as that the party in control of it will not injure him by any acts of negligence or willfulness and wantonness; but that does not authorize him to pass in such close proximity to the automobile, if he sees, or in the exercise of reasonable care, by the use of his senses of sight and hearing, could see it, as to excuse him from using his eyes and ears to see whether or not there is an automobile in such close proximity as to

imperil him.  If he does see that, or in the exercise of reasonable care could see it, it would have been his duty not to confront the peril, but to desist from going over the street until the automobile had passed."  The italicized language was duly excepted to by defendant, and the principle it states is challenged as erroneous and prejudicial to him.

It is well settled that the rule which imputes negligence as matter of law to persons who cross a railroad track without first stopping, looking and listening is not applicable to persons merely crossing a street.— *Corona C. & I. Co. v. White,* 158 Ala. 627, 48 South. 362, 20 L. R. A. (N. S.) 958; *Barbour v. Shebor,* 177 Ala. 304, 58 South. 276.

In the case of *Hennessey v. Taylor,* 189 Mass. 583, 76 N. E. 224, 3 L. R. A. (N. S.) 345, 4 Ann. Cas. 396, it is said:  "There is no imperative rule of law which has been called to our attention generally requiring a pedestrian, when lawfully using the public ways, to be continuously looking or listening to ascertain if auto cars are approaching, under the penalty that, upon failure to do so, if he is injured, his negligence must be conclusively presumed."  And further:  "The usual rule of ordinary care does not impose upon them [pedestrians] the burden of being constantly on the lookout to see if their path is free from dangerous defects, or in a state of apprehension of personal injury from other troubles.  The traveler not only has a right to presume that the way is reasonably fitted for his use, but, also, that those who may be lawfully using it with himself will exercise a proper degree of care."

In the very recent case of *Baker v. Close,* 204 N. Y. 92, 97 N. E. 501, the rights and duties of pedestrians and drivers of vehicles on streets are very sensibly and sanely discussed, and we quote from the opinion of

Werner, J.; as follows: "The rigorous rule applicable to steam railroad crossings is necessarily relaxed at the usual street crossings, and the footman is not required, as matter of law, to look both ways and listen, but only to exercise such care as the case requires; for he has the right to assume that a driver will also exercise due care, and approach the crossing with his vehicle under proper control. * * * A pedestrian who crosses a street at a place where there is no regular crossing may be chargeable with some additional vigilance, because it is not a place set aside for the crossing of foot passengers, although even at such a place drivers are required to be watchful and careful.—*Moebus v. Herrmann,* 108 N. Y. 349, 15 N. E. 415, 2 Am. St. Rep. 440." This was an automobile case.

In *Barbour v. Shebor, supra,* it is said that "the simple rule is that drivers on the streets and pedestrians, each recognizing the rights of the other, are required to exercise reasonable care." But, as said in *B. R., L. & P. Co. v. Williams,* 158 Ala. 381, 387, 48 South. 93, "what might be considered ordinary care in one case might, under the circumstances of another, amount to culpable negligence."

In *Barker v. Savage,* 45 N. Y. 191, 6 Am. Rep. 66, the point of decision was that "the court erred in charging the jury that the plaintiff was only required to look ahead along the crossing, and if, in so looking, she discovered no obstacle thereon, she was not negligent in proceeding to cross. In addition to this, it was her duty to look along the street in the vicinity of the crossing, upon both sides thereof, for a reasonable distance, to enable her to avoid danger from approaching teams."

In *Niosi v. Emp. Steam Laundry,* 117 Cal. 257, 49 Pac. 185, it was held that in crossing a street *where vehicles are numerous* it is a pedestrian's duty to look

both ways before crossing. And in *Cotton v. Wood*, 8
C. D. 568, and *Evans v. Adams Exp. Co.*, 122 Ind. 362,
23 N. E. 1039, 7 L. R. A. 678, it is declared to be his
duty to look out for passing vehicles.

Stating the general rule applicable to travel on
streets, Judge Elliott said, in *Simons v. Gaynor*, 89 Ind.
165: "Footmen traveling the streets of a city are bound
to exercise reasonable care; and, if they are injured
by reason of their omission to use such care, no action
will lie. Whether reasonable care was exercised de-
pends in a great measure upon the facts of the partic-
ular case, and no precise rule can be laid down."

In accord with these views, the general rule applica-
ble to automobiles and pedestrians is fully stated in
2 Elliott on Roads and Streets (3d Ed.) § 1123, where
many other cases are cited.

Upon a thorough consideration of these and other au-
thorities, we are satisfied that it cannot be affirmed, as
matter of law, that a pedestrian's omission, in crossing
a street, to first look up and down the street for ap-
proaching vehicles is or is not negligence per se on his
part. He must use due care to avoid collisions with
them; but what is due care in this regard will depend
upon the character of the street, the extent of its use
by vehicles, the kind of vehicles that frequent it, and
upon the locus of the attempted crossing, i. e., whether
it is at a regular and general crossing, or at a point not
generally so used, or, as in the present case, at a point
where there is no occasion at all for crossing, and cross-
ing is very infrequent. Other considerations, also, may
obviously increase or diminish the hazards of inatten-
tion. Due care is relative always; and precautions that
might be safely omitted on the sleepy streets of a village
are every moment essential to the life of foot travelers
on Broadway in New York.

We therefore hold that the trial court erred in instructing the jury, as matter of law, that a pedestrian is under no duty, when going to cross a street, to look up and down the street to see if any automobile is coming. Whether or not the omission to do so in this case exhibited a want of due care was a question for the jury to determine, in view of the circumstances of this particular case. We have stated the general rule only, and are not to be understood as declaring that a pedestrian may not *in any case* so act upon a street as that his conduct may be pronounced negligent as matter of law. See *Corona C. & I. Co. v. White, supra.*

The case of *Corona C. & I. Co. v. White, supra,* is not in conflict with this view; for it was there decided that the plaintiff, who heard the wagon coming, was not guilty of contributory negligence in crossing the street without watching its approach, since she had a right to presume that the horses were under control, and not, as was the case, running away. It is true that the opinion states that it is not contributory negligence "to cross streets without looking up and down the street," but this must be understood as meaning that it is not negligence *as matter of law,* which was the proposition embodied in the request for the affirmative charge, held to have been properly refused. If the statement quoted was intended to mean more than this, it was but obiter dictum, and cannot be followed.

In *Barbour v. Shebor, supra,* where plaintiff was injured by an automobile while crossing the street, it was held by a divided court that a plea setting up as a defense that plaintiff "negligently attempted to cross said street without looking for said automobile, which was then and there approaching in rapid motion on said street, and was struck by said automobile and injured, although he knew that automobiles were likely to pass

[Adler v. Martin.]

on said street at any moment," was insufficient on demurrer. It will suffice for present purposes to say that a pedestrian's failure *to look for* any *particular* automobile cannot be characterized as negligent, unless he knew it was approaching in such proximity as might render his inattention a menace to his safety. And so "negligently attempting to cross the street," without looking *generally* for a particular car, is not the equivalent of a negligent failure to look up or down the street in the direction from which the car might be approaching. In our judgment, that ruling is not in conflict with the principle presently stated and adopted.

We are not inclined to the view of appellee that the erroneous statement by the trial court, which we have discussed and condemned, was cured by the contextual explanations that followed; but this we deem it unecessary to decide, as the question will hardly recur. What we have said will serve for future guidance.

Charges A, I, J, and M, requested by defendant, were properly refused. They fail to postulate a finding of the essential facts relied on in either plea of contributory negligence as a basis for the verdict hypothetically requested for defendant. Defendant can rely only on such acts of contributory negligence as he has specially pleaded; and hence charges framed like these have a tendency to confuse or mislead the jury and should not be given, though their giving might not be reversible error. "Charges should hypothesize the facts relied upon as a defense, and not require the jury to examine and consider the pleas, in order to determine what is meant by said charges."—*B. R., L. & P. Co. v. Fox,* 174 Ala. 657, 56 South. 1013; *B. R., L. & P. Co. v. Hayes,* 153 Ala. 178, 44 South. 1032; *Alexander v. Wheeler,* 69 Ala. 332.

[Adler v. Martin.]

Charges B, C, E, and F were faulty and properly refused. Charge B withdraws from the jury the question of intestate's negligence on the facts stated, and also its proximate causation of his injury. Charges C and E. assumes that to cross a street "in front of" a moving automobile is per se dangerous and negligent, regardless of its proximity or other circumstances. And charge F asserts that it was intestate's duty, *as matter of law,* to look for approaching vehicles.

For the errors pointed out, the judgment will be reversed, and the cause remanded for another trial.

Reversed and remanded. All the Justices concur in the reversal, except DOWDELL, C. J., not sitting.

SIMPSON, J., dissenting in part, is of the opinion that defendant waived objection to the admission of the Birmingham ordinance by not objecting specifically on the ground that proof of its prior operation had not been made, and holds that the affirmative charges for defendant on counts 3 and 5 were properly refused. He also holds that the oral charge of the trial court, in the particular discussed, was free from error.

MAYFIELD and SAYRE, JJ., dissenting in part, hold that charge J sufficiently postulated the contributory negligence relied on by its reference to "defendant's pleas of contributory negligence," of which there were but two, and that the charge should have been given. In all other respects they concur in the opinion.