**Roland Gannon, Plaintiff in Error, v. Mildred Kiel, Defendant in Error.**

Opinion filed February 1, 1929. Rehearing denied April 6, 1929.

ROPIEQUET & FREELS, for plaintiff in error.

POPE & DRIEMEYER, for defendant in error.

MR. JUSTICE NEWHALL delivered the opinion of the court.

Plaintiff in error brings this suit to reverse a judgment obtained against him as defendant in the court below in an action brought by the defendant in error to recover damages sustained by her in a collision with plaintiff in error's automobile.

(For convenience, in this opinion, the defendant in error, Mildred Kiel, will be referred to as plaintiff,

and the plaintiff in error, Roland Gannon, as defendant.)

The declaration filed by the plaintiff consisted of two counts, the first alleging general negligence on the part of the defendant in the operation of his automobile, and the second alleging that the injury caused to plaintiff was due to wilful and wanton negligence on the part of the defendant.

The general issue was filed, and the case went to trial before a jury, which returned a verdict in favor of the plaintiff in the sum of $6,500, upon which, after motion for a new trial was overruled, judgment was entered.

The plaintiff was injured August 8, 1927, about eight o'clock in the morning, at Eighth Street and Illinois Avenue, East St. Louis, Illinois, in an accident involving the automobile driven by the defendant. As a result of the accident, plaintiff's right leg was broken above the ankle, and she was taken to a hospital where she received medical treatment for a considerable period of time.

Eighth Street is an asphalt paved street extending north and south, and intersects at right angles Illinois Avenue, or State Street as it is commonly called, in the busy portion of the business and residential section of East St. Louis. Street cars are operated on State Street on double tracks. Vehicular traffic on Eighth Street has the right of way in both directions over traffic on State Street, traffic on the latter street being regulated by "stop" signs.

Plaintiff resided on Eighth Street south of State Street, and, on the morning she was injured, she left her home a little before eight o'clock in company with her sister, both of whom were on their way to work. Plaintiff testified that she walked north on the west side of Eighth Street, crossed to the north side of State Street, and, before starting across easterly on Eighth Street, stopped and looked both ways to see if

there was any machine coming, and that she saw only one coming north; that she waited on the west side of Eighth Street until this machine passed; and then started across the street, when she was struck by defendant's machine; that as she crossed the street, she was carrying an umbrella straight up above her head; that it was raining or misting slightly; that her sister was walking to her right about a step in advance; that in about the middle of the street, without warning, she was knocked to the pavement and dragged by defendant's automobile about 8 feet; that the driver of the machine had not given any warning, sounded any horn, or given any signal of his approach; that the plaintiff did not see the machine until it struck her.

Plaintiff's sister, Hollie Kiel, testified in corroboration of plaintiff's version of the accident, and further stated that, as she and her sister walked easterly across the street, the witness was to the right and a little in front of the plaintiff; that the witness saw defendant's car just barely in time to step back to avoid being hit, and that, as she stepped back, the car went past the witness and struck her sister, Mildred; that she judged the speed of the car at 25 or 35 miles per hour; that the car traveled about 40 feet after it hit her sister before it stopped; that the defendant did not blow his horn or give any signal prior to the collision.

S. W. Moore, as witness for the plaintiff, testified that he was secretary of the Board of Education of East St. Louis, Illinois; that, just prior to the accident, he was walking west on Illinois Avenue at Eighth Street on the north side of Illinois Avenue; that about the middle of the street he passed the plaintiff and her sister, who were walking east; that just after passing them, he heard a noise resulting from the collision between defendant's car and the plaintiff, and he then looked around and saw the plaintiff lying on the street; that, as he went back to assist, he noticed the defendant's car about 30 feet to the north; that from what

he saw, he judged the speed of the car from 30 to 35 miles per hour.

Mrs. Kiel, witness for plaintiff, testified that the defendant visited the plaintiff at the hospital, and while there stated in the presence of herself and the plaintiff that he did not see the plaintiff prior to the accident, and that he did not know that he had had a collision until he felt the jar in his car.

Other testimony on behalf of plaintiff showed that at and near the intersection of Eighth Street and Illinois Avenue there are several stores and business houses, and that in the immediate vicinity surrounding the intersection are places of business and residences; that traffic at the intersection is quite congested in the morning, and that considerable numbers of people pass on both streets at this intersection.

The defendant testified that he was driving north on Eighth Street; that, before coming to Illinois Avenue, he slowed down, sounded his horn, and started across the intersection in second gear; that he shifted into high gear as he crossed the north street car tracks, and that he was not going over 10 or 12 miles per hour across the intersection; that he looked for pedestrians, and that the only persons he saw were on the west side of the street going in the same direction that he was; that there were no persons crossing Eighth Street as he came up to the intersection; that on the north sidewalk line plaintiff came in contact with the side of his car, and that he applied the brakes, stopped his car, and went back to pick her up.

On cross-examination, he testified that he always sounded his horn at every corner, and that, to the best of his knowledge, he did sound his horn on the morning in question; that he did not sound it to give the plaintiff and her sister warning because he saw no one crossing the street at the time; that the only persons he saw were on the west side of Eighth Street; that he did tell the plaintiff at the hospital that he did not see

her until his car struck her, and that he could not say where they were immediately before then; that before crossing Illinois Avenue he did not come to a full stop; that he had a clear view in both directions on State Street, and that, as he drove northward across the intersection, he had a wide unobstructed view; that he did not see the girls until one of them stepped into the side of his car, and that he imagined that they came from across the street.

Vernon Garrison, witness for the defendant, testified that he was walking on the west side of Eighth Street, and that he noticed plaintiff and her sister when they were about half-way across the street; that he saw the defendant's car coming from the south when it crossed the street car tracks, and that he judged the speed of the car at 10 or 12 miles per hour; that at this time there was another car coming from the north approaching Illinois Avenue, and that, when this car sounded its horn, the plaintiff stepped forward quickly, and was struck by defendant's car.

J. C. Kramer, witness for defendant, testified that, immediately prior to the accident, he was driving south on Eighth Street approaching State Street; that, when about 150 feet north of State Street, he saw the defendant's car when he started across Illinois Avenue, that he judged the speed of the car from 10 to 15 miles per hour; that he saw two young ladies on Eighth Street 6 or 8 feet from the northwest corner, and that they were going east; that, when they reached the center of the street, Gannon's car was between the north car tracks and the sidewalk; that he was looking at the approaching traffic; that, when he saw the girls, he sounded his horn; that he saw defendant's car strike the plaintiff, who fell to the street, and that she was struck either by the running board or the fender on the left side of the car.

Witness Hart testified for the defendant that he was employed at a filling station located on the southwest

corner of the intersection; that he judged the speed of defendant's car at 7 or 8 miles an hour as it crossed Illinois Avenue; that he heard defendant's car blow its horn before it started across the intersection on the south side of the street car tracks, and that he saw the plaintiff run directly into the left front wheel of the defendant's machine.

Other testimony on behalf of the defendant consisted of an affidavit of an absent witness, whose affidavit substantially corroborated defendant's contention as to the happening of the accident.

Peremptory motions were asked by the defendant at the close of the plaintiff's case, and again at the close of all of the evidence, to instruct the jury to find for the defendant, which motions were overruled and exceptions taken. It is contended on behalf of the defendant that the record does not show due care on the part of the plaintiff or negligence on the part of the defendant to warrant a verdict under the first count, and that there is no evidence whatever to support the verdict under the second count of the declaration charging wilful or wanton misconduct.

It is argued that there is no testimony by anyone to show that the defendant intentionally or deliberately ran into plaintiff. It is admitted by counsel, and the record so shows, that the defendant did not see the plaintiff until his machine collided with her, and it is argued that this failure on the part of the defendant, while negligent, cannot be said, under all the circumstances, to amount to wilful or wanton negligence.

In *Brown v. Illinois Terminal Co.*, 319 Ill. 326, at page 330, it was said:

"It has been frequently said by this and other courts that whether an injury is the result of wilful and wanton conduct is a question of fact, to be determined by the jury from all the evidence. Where there is no evidence tending to support the charge of wilful and wanton conduct there is no question of fact to submit

to a jury, and the motion to direct a verdict on those counts would present a question of law for the court to decide. Courts have recognized the difficulty of accurately stating under what circumstances a defendant may be held guilty of wilful and wanton misconduct in causing an injury. Such conduct imports consciousness that an injury may probably result from the act done and a reckless disregard of the consequences. Ill-will is not a necessary element to establish the charge. Plaintiff and defendant had a legal right to pass over the highway crossing, and each was required, in doing so, to observe due regard for the legal right of the other. A willful or wanton injury must have been intentional or the acts must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as failure, after knowledge of the impending danger, to exercise ordinary care to prevent it, *or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. (Lake Shore & Michigan Southern Railway Co. v. Bodemer, 139 Ill. 596; Heidenreich v. Bremner, 260 id. 439; Illinois Central Railroad Company v. Leiner, 202 id. 624.)*"

If the jury believed the testimony of the plaintiff and her witnesses, then it was clearly a question of fact for the jury to determine whether defendant, under all the circumstances shown, was guilty of wilful or wanton negligence.

It is the clear duty of an automobile driver to have regard for the safety regulations provided by law, and to take into consideration existing conditions at the place where an injury may occur. The defendant did not look, when it was his duty to be on his guard and have his car under control, at a busy street intersection where he was bound to know that pedestrians might be crossing.

It was the positive duty of the defendant, if he saw plaintiff crossing the street, to give reasonable warning of his approach, and to use every reasonable precaution to avoid injuring her, and, if necessary, stop his car until he could safely proceed. Nearly all of the witnesses for defendant saw plaintiff and her sister crossing the street, while the defendant's car was proceeding across the street intersection. Defendant testified that his view was unobstructed, yet he did not see plaintiff until she was struck by his car.

It was peculiarly the province of the jury to determine, under all of the circumstances, whether he was guilty of such a degree of negligence as could be said to be wilful or wanton. Failure to discover danger through recklessness or carelessness, when it could have been discovered by the exercise of ordinary care, may ofttimes be considered wilful or wanton negligence. See *Brown v. Illinois Terminal Co., supra*, and *Fromm v. Seyller*, 245 Ill. App. 392, where many decisions of our courts are quoted and commented upon in reference to the duties and obligations of drivers of automobiles upon the public highway. In view of these decisions and the facts in this record, we are of the opinion that the evidence supports the finding of the jury that the defendant was guilty of wilful or wanton negligence.

It is also urged that plaintiff was guilty of such contributory negligence as bars her right to recover. If, as we hold, defendant was guilty of wilful or wanton negligence, then plaintiff is not precluded from recovering damages. However, the facts as to the care that plaintiff was exercising at and prior to her injury are set forth briefly in the foregoing statements of the various witnesses, and, after due consideration of the record, we are of the opinion that, if it were necessary to so determine, plaintiff cannot be said, as a matter of law, to be guilty of contributory negligence. Her care or want of care was for the jury to determine

under all the surrounding conditions that existed at and prior to her injury. The proof tends to show that she looked before crossing the street, and could not be held to be bound to anticipate that defendant's car would approach at such rapid speed without giving her due warning.

Counsel contend that a criminal offense was charged in the second count of the declaration, and that it was necessary to prove the same beyond all reasonable doubt. The most that can be said is that this count charged a misdemeanor, and, under the holding of the Supreme Court in *Rost v. Noble & Co.*, 316 Ill. 357, proof by a preponderance of evidence is sufficient. It is only where the charges in a civil case amount to a felony that proof beyond a reasonable doubt is required. Instructions offered by defendant only required plaintiff to prove her case by a preponderance of evidence. A party cannot complain of an error in instructions when the same error is found in the instructions offered by the complaining party. (*McInturff v. Insurance Co. of N. A.*, 248 Ill. 92.)

The last contention of counsel is that the verdict is excessive. It is undisputed that her actual pecuniary loss was over $600 in wages and about $800 for hospital and medical bills. The proof tended to show that she suffered a compound fracture of her leg below the knee, with the bones protruding through the flesh; that she has a deformed leg, being shorter by a quarter of an inch than the other, causing a decided limp and hindering her in ordinary use; that she suffered considerable pain, and that the suffering existed over a period of several months. We are of the opinion that the verdict was not so excessive as to warrant a new trial.

For the reasons aforesaid, we are of the opinion that the judgment of the court below should be affirmed.

*Affirmed.*