## Sophie Trennert, Plaintiff-Appellant, v. Curtis C. Coe, Defendant-Appellee.

### Gen. No. 10,783.

Second District.

January 24, 1955.

Rehearing denied February 25, 1955.

Released for publication February 28, 1955.

Owens, Owens & Rinn, of Chicago, for appellant; John E. Owens, and Walter B. Bieschke, both of Chicago, of counsel.

■■■■■■■■■■■■■■

Rathje & Woodward, of Wheaton, for appellee; John S. Woodward, of Wheaton, of counsel.

MR. JUSTICE CROW delivered the opinion of the court.

This is an action to recover damages for personal injuries sustained by plaintiff, a woman, age 64 years, by reason of being struck by defendant's auto as she was walking across Gary avenue, a public highway, north of Wheaton, Illinois, at point other than at a crosswalk or intersection.

Plaintiff charged ordinary negligence and wilful and wanton misconduct. The trial court at the close of plaintiff's evidence directed a verdict in favor of defendant and entered judgment thereon. Plaintiff appeals, claiming the questions of contributory negligence, negligence of defendant, and wilful and wanton misconduct should have been submitted to the jury as issues of fact.

An analysis of the evidence shows that Gary avenue, at the place of the accident, curves to the east, north of Jewell road. Jewell road, a gravelled highway, intersects Gary avenue from the west, but does not cross it. The view from the point of the accident to the curve north of Jewell road is unobstructed for some 350 feet; Gary avenue is a two-lane highway, paved with concrete and is 18–20 feet wide, and runs straight for approximately 200 feet before curving to the east. South of where plaintiff was injured, the road runs straight toward Wheaton. The general locale is rural. The day was cloudy, visibility was good, and the roads were dry.

Plaintiff on May 9, 1952, at about 8:30 a. m., was going from her home on Jewell road, on foot, to a cemetery south of Wheaton, and while walking south on the east shoulder of Gary avenue, when approximately 150 feet south of Jewell road, saw her neighbor, Mrs. Regina Perry, accompanied by her daughter,

168

Gail Perry, driving in a car toward Wheaton. She accepted an invitation for a ride by signal, and Mrs. Perry pulled off onto the west shoulder of Gary avenue, opposite plaintiff, and waited for her to cross. A few seconds later a squad car passed Mrs. Perry going south. Plaintiff, before attempting to cross Gary avenue, and while on the shoulder, looked to the north and to the south, saw no cars coming, and started to walk west across the road, and when about on the center line or one foot or one step over on the west side of the highway, west of the center line, struck or was struck by defendant's southbound car as it was being driven in the southbound traffic lane. She could not remember if she looked again after she stepped on the paved portion. She never saw the squad car or the defendant's car; she never heard any auto horn sounded, or the sound of any tires or brakes.

Mrs. Regina Perry testified she observed first the squad car, and then plaintiff looking in both directions, while on the shoulder, but she did not see plaintiff step on the pavement or thereafter crossing the same or the actual impact. Mrs. Perry put her head out of the window, and saw defendant's car when it was about even with or just north of Jewell road, coming south. It was about 200 feet away at that time. When she turned her head back again, the accident had happened and plaintiff was lying on the pavement at an angle in front of the Perry automobile. Defendant had stopped his car about 50–75 feet beyond the point of impact. She estimated 10–30 seconds went by from the time she saw plaintiff look until the time of the accident.

Gail Perry, age 16, who was in the right front seat of the Perry car, corroborated the testimony of her mother, about plaintiff's looking to the south and north before she started to cross Gary avenue. She did not notice what plaintiff did thereafter until she saw plaintiff's feet go up in the air when struck by a south-

bound car. Plaintiff was then either on the center line or a little west of it. Gail Perry did not hear the sound of a horn or any sound indicating application of brakes. She did see the squad car pass a second or two after they had stopped.

Plaintiff was rendered unconscious, and sustained serious injuries by reason of the accident.

Defendant, upon examination under sec. 60 [Ill. Rev. Stats. 1953, ch. 110, § 184; Jones Ill. Stats. Ann. 104.060], stated he saw plaintiff for the first time when his auto was 200 feet north of Jewell road, and at that time she was 150 feet south of Jewell road.

Defendant claims that plaintiff could have readily seen his approaching car, had she looked, after reaching pavement, and having continued to walk across the pavement, she placed herself in the path of the car and by doing so was guilty of contributory negligence as a matter of law.

Defendant claims that at the time of the accident plaintiff's conduct was governed by sec. 75, par. 172 of chapter 95½, Ill. Rev. Stats., 1953 [Jones Ill. Stats. Ann. 85.204], which provides as follows:

"(a)  Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection, shall yield the right of way to all vehicles upon the roadway."

██ We do not construe the statute to mean that a pedestrian who crosses a roadway at any point other than an intersection or a marked crosswalk would not be required to exercise a high degree of care, but we cannot say as a matter of law, from that fact alone, that she would be required to yield the right of way to a motorist, under all conditions. Facts peculiar to a situation might require her to exercise more care than to look in both directions, i. e., to the right and left before stepping upon a paved road, and a failure to look again for approaching traffic could constitute contributory negligence as a matter of law. But in

170

the instant case, the plaintiff could see to the north only some 350 feet. She saw nothing coming from that direction. It was only a matter of 10–30 seconds until she had travelled west from the east shoulder of the highway to the point of impact. We do not believe the failure of plaintiff to look again, if she did not, was so palpably contrary to the conduct of a reasonably prudent person as to show contributory negligence as a matter of law. Whether she had under such circumstances a right to rely on the assumption that a vehicle operator would use ordinary care to protect her, or under all the circumstances was guilty of contributory negligence, we believe is a question of fact for a jury.

In Moran v. Gatz (1945), 390 Ill. 478, the plaintiff pedestrian sued the defendant motorist for personal injuries suffered when struck at a street intersection by defendant's car. Judgment in the trial court was for the plaintiff. The Appellate Court reversed without remanding, holding plaintiff was guilty of contributory negligence as a matter of law. The Supreme Court reversed and remanded to the Appellate Court. Although the facts are not exactly the same as in the case at bar and the right of way statute, par. 171, ch. 95½, Ill. Rev. Stats. 1953 [Jones Ill. Stats. Ann. 85.203], conversely to par. 172 involved here, gave the right of way to a pedestrian, these statements of principles are helpful, pp. 482, 483, 484–485, 485–486:

"On the other hand, it was appellant's duty to so conduct herself as to be free from contributory negligence. She had no right to rely entirely on the fact that she had the right of way. Neither had she a right to unreasonably intrude herself into the midst of traffic. The danger of such an act on her part would be apparent and have a natural tendency to hold her back, and if she carelessly got herself into such a position, the law charges her with contributory negligence and leaves her remediless. . . .

171

"In Adler v. Martin, 179 Ala. 97, 59 So. 597, it was declared that whether a pedestrian is guilty of negligence per se in failing to look up and down a street for approaching vehicles before attempting to cross, or whether such failure is negligence at all, is a question for the jury on the particular facts of each case.

"The Supreme Court of California, in Childs v. McQuagg, 213 Cal. 661, 3 Pac. 2d 309, in construing an ordinance of the City of Los Angeles which made it unlawful for the operator of any vehicle to drive onto any crosswalk (outside a designated district) while any pedestrian was crossing the roadway until such pedestrian shall have passed beyond the path of said vehicle, and in applying such construction to facts showing that a pedestrian, before attempting to cross a street had seen a truck about 125 feet away, and believed she could cross to the streetcar in safety, and finding herself in sudden peril stood practically still, held such evidence sufficient to sustain a finding that the respondent was within a zone in which she had a right to assume that reasonable care would be exercised by motorists to avoid injuring her. . . .

"In Skovronski v. Genovese, 124 Conn. 482, 200 Atl. 575, plaintiff had a clear view of the street for a quarter of a mile easterly from the crosswalk. Before leaving the curb to cross the street, at about 8:00 P.M. in November, she looked both ways and did not see any automobiles approaching from any direction, and proceeded across the street without again looking to observe traffic conditions, and did not see defendant's car before it struck her. In the Supreme Court it was contended plaintiff, because she did not again look for approaching traffic while proceeding across the street, should be adjudged guilty of contributory negligence as a matter of law. In affirming the judgment for the plaintiff, the court held that she was entitled to assume that the defendant would proceed with reasonable care

172

as to the situation and with due regard to the rights of pedestrians traversing crosswalks. It was also held that plaintiff's failure to look again was not so palpably contrary to the conduct of a reasonably prudent person as to render the question one of law, but it remained one of fact for the jury.

"In Swan v. Dailey-Luce Auto Co. 225 Ia. 89, 277 N. W. 580, plaintiff, 77 years old, at 10:00 P.M., before crossing a street, looked both ways and saw no car approaching and before he had entirely crossed the street he was hit by defendant's car. Plaintiff did not again look up. The court held that a person crossing a street is not required to anticipate negligence on the part of another, but is justified in assuming that the other will not violate the law. . . .

"The generally accepted rule is that while a statute such as ours gives pedestrians the right of way, it does not confer upon them an advantage which necessarily absolves them from guilt of contributory negligence. Each case must be determined from its particular facts. The question of contributory negligence is one which is pre-eminently for the consideration of a jury. It cannot be defined in exact terms and unless it can be said that the failure of the plaintiff to look again was so palpably contrary to the conduct of a reasonably prudent person as to show contributory negligence, the issue is one for the jury. (Blum v. Getz, 366 Ill. 273.) Whether failure to look was shown and constituted, in this case, want of due care, was an issue of fact for the jury. Morrison v. Flowers, 308 Ill. 189. . . .

"The rule seems to be quite universal that a pedestrian's failure to keep a constant lookout, or to look again after having determined that he can safely cross ahead of approaching traffic, is not contributory negligence as a matter of law but it is a question for a jury whether he was in the exercise of ordinary care for his own safety. Long Transportation Co. v. Domurat, 93 Fed. 2d. 23; Young v. Tassop, 47 Cal. App.

2d 557, 118 Pac. 2d 371; Lawler v. Gaylor, 233 Iowa 834, 10 N. W. 531; Chevalley v. Degan (Ohio App. 1943) 52 N. E. 2d 544; Reir v. Hart, 202 Minn. 154, 277 N. W. 405."

■ ■ It was the duty of defendant when he saw plaintiff crossing the highway to give reasonable warning of his approach, to use every reasonable precaution to avoid injuring her, and, if necessary, to stop his car until he could proceed safely. His view was unobstructed for a space of over 400 feet after he saw her, and his car travelled 50–75 feet after the impact. Whether this was negligent conduct was a question for the jury.

■ Failure, after knowledge of impending danger, to exercise ordinary care to prevent it, or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care—circumstances exhibiting a reckless disregard for the safety of others—constitutes wilful and wanton conduct: Brown v. Illinois Terminal Co., 319 Ill. 326.

In Brown v. Illinois Terminal Co., supra, the principles are stated in this manner, p. 330, 331, 332, and 333:

"While this is a brief outline of the evidence and situation, we think it sufficient to present the question raised by defendant that the court erroneously denied its motion to direct a verdict as to the counts charging that the injury was the result of the willful and wanton conduct of defendant. It has been frequently said by this and other courts that whether an injury is the result of willful and wanton conduct is a question of fact, to be determined by the jury from all the evidence. Where there is no evidence tending to support the charge of willful and wanton conduct there is no question of fact to submit to a jury, and the motion to direct a verdict on those counts would present a question of law for the court to decide. Courts have recognized the difficulty of accurately stating under what

174

circumstances a defendant may be held guilty of willful and wanton misconduct in causing an injury. Such conduct imports consciousness that an injury may probably result from the act done and a reckless disregard of the consequences. Ill will is not a necessary element to establish the charge. Plaintiff and defendant had a legal right to pass over the highway crossing, and each was required, in doing so, to observe due regard for the legal right of the other. A willful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of the impending danger, to exercise ordinary care to prevent it, or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. (Lake Shore and Michigan Southern Railway Co. v. Bodemer, 139 Ill. 596; Heidenreich v. Bremner, 260 Ill. 439; Illinois Central Railroad Co. v. Leiner, 202 Ill. 624.) . . . That plaintiff ought to have known of the approach of the train did not relieve defendant of the duty of warning him of its approach. Under the decisions of this court, whether the injury was the result of the willful and wanton conduct of defendant was, under all the evidence, a question of fact for the jury, and the court did not err in refusing to direct a verdict as to the counts charging willfulness and wantonness. . . .

"We do not think that under all the circumstances shown by the proof the court would have been warranted in deciding, as a matter of law, that there was no evidence tending to prove the charge of willfulness and wantonness. If we are correct in this conclusion it is unnecessary to discuss the question argued in the briefs whether plaintiff was guilty of contributory negligence."

In the case here, defendant had knowledge of the presence of plaintiff on the roadway. The plaintiff

was injured at or near defendant's lane of traffic. The time elapsing for the defendant to travel the distance of 400 feet was a matter of some seconds. There is evidence, although negative, that no horn was sounded or any noise made of application of brakes. We believe all these facts, together with all reasonable inferences which may be drawn therefrom, standing alone, might, under the rule announced under Brown v. Illinois Terminal Co., supra, have been considered by the jury upon the question of wilful and wanton conduct.

Further support for our views may be found in English v. Gordon (1924), 231 Ill. App. 316; Stansfield v. Wood (1924), 231 Ill. App. 586; Gannon v. Kiel (1929), 252 Ill. App. 550; Anderson v. Krancic (1946), 328 Ill. App. 364; Paul v. Garman, 310 Ill. App. 447; and Janjanin v. Indiana Harbor Belt R. Co. (1951), 343 Ill. App. 491—directly or in principle.

We are not unmindful of the cases defendant has suggested: Cihal v. Carver (1948), 334 Ill. App. 234; Budovic v. Eschbach (1953), 349 Ill. App. 163; Prill v. City of Chicago (1942), 317 Ill. App. 202; Pollard v. Broadway Cent. Hotel Corp. (1933), 269 Ill. App. 77; Burns v. Chicago & A. R. Co. (1921), 223 Ill. App. 439; Illinois Cent. R. Co. v. Oswald (1930), 338 Ill. 270. We have considered them, but, without here trying to analyze and discuss them all, we do not believe any of them are decisively contrary to our determination.

■ When all of the evidence adduced for the plaintiff is considered, in its aspect most favorable to the plaintiff, together with all reasonable inferences that may legitimately be drawn therefrom, if considered as true, there is not a total failure or total lack of evidence to prove the plaintiff's case—there is evidence which, standing alone, fairly tends to prove the plaintiff's case: Merlo v. Public Service Co. of Northern Illinois (1943), 381 Ill. 300; Hunt v. Vermilion County Children's Home (1942), 381 Ill. 29. That is all we are

presently called upon to determine in the present state of the record and that is all we do determine.

Accordingly, the motion of the defendant for a directed verdict at the close of the plaintiff's evidence should not have been allowed, and the allowance thereof and the judgment for defendant entered on the directed verdict is reversed and the cause remanded for a new trial.

Reversed and remanded.