## VAN PELT v. UNITED STATES.
### No. 9299.

Circuit Court of Appeals, Sixth Circuit.
April 6, 1943.

Thomas E. Marshall, of Dayton, Ohio (Marshall, Harlan & Marshall, of Dayton, Ohio, on the brief), for appellant.

Keith L. Seegmiller, of Washington, D. C. (Leo Calvin Crawford, of Dayton, Ohio, and Francis M. Shea, Lester P. Schoene, and Wilbur C. Pickett, all of Washington, D. C., on the brief), for appellee.

Before HICKS, ALLEN, and Mc-ALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Appellant Willard F. Van Pelt brought suit to recover monthly disability payments on a government convertible life insurance policy, and after an adverse verdict and judgment entered thereupon, appealed, claiming error on the part of the trial court in refusing to submit proposed interrogatories to the jury, and for erroneous instructions. Because of our determination of the case, it is unnecessary to consider a cross-appeal filed by appellee.

When appellant entered the armed forces in May, 1918, he procured a yearly renewable term insurance policy in the principal sum of $10,000. He permitted the policy to lapse in July, 1919, for nonpayment of a premium. On July 1, 1927, he procured reinstatement and conversion of the policy to a United States Government convertible term insurance policy, in the principal sum of $5,000. In May of 1934, appellant suffered an attack of general paralysis of the insane and his guardian applied for disability benefits, which were awarded in October, 1934, by the Insurance Claims Council of the Veterans' Administration. These benefits were paid for a total period of 59 months, until March, 1939. Thereafter, the Council reviewed the case, found that appellant had procured reinstatement by fraud, and thereupon canceled the policy.

The fraud alleged by the Government, upon which reinstatement of the policy was procured, was that appellant had suffered from syphilis before he joined the armed forces; that he was afflicted with the disease in 1926 and received, at that time, treatments for it from a physician; and that he represented, as a basis for reinstatement of his insurance, that he had never been afflicted with the disease.

It is admitted by appellant that he had syphilis before his enlistment in 1918. However, he claims that he thought that it had been cured, and that he did not know of its active condition prior to reinstatement of his insurance. He insists that he did not receive treatments from a physician for the disease, subsequent to his enlistment, until three years after the insurance was reinstated. Appellant further contends that in his answers as to his physical condition, during his medical examination and for purposes of the medical report, he understood that the questions were directed to cover only the period subsequent to the lapse of his policy in 1919; and that all of his answers, based on this belief, were true. In addition, he contends that the Veterans' Bureau had no right to inquire as to a syphilitic condition existing prior to his enlistment, inasmuch as he was entitled to a conclusive presumption that he was in sound physical condition as of the date of his enlistment; and that instructions to the jury on the question of his alleged total and permanent disability were erroneous.

Briefly, the chief errors alleged are that the trial court held that the Government

was entitled to inquire of appellant as to a syphilitic condition existing prior to his enlistment, and refuse reinstatement on proof thereof; that representations of appellant, knowingly made and contrary to the actual fact, that he was not so afflicted prior to such enlistment, would be fraudulent; and that the court erred in refusing to submit special interrogatories to the jury requiring answers to the questions: (1) whether appellant was totally and permanently disabled since January, 1938; and (2) whether he had received medical treatment from the date of lapse of policy to the date of its reinstatement.

In July, 1927, when appellant made application for reinstatement and conversion of policy, such reinstatement was procurable by two methods. Under 44 Stat. 799, see Title 38, § 515, U.S.C.A., where a veteran could not comply with the requirements of the rules and regulations as to physical condition, the application would be approved, provided that the applicant's disability was the result of an injury or disease contracted in active military or naval service during the World War. However, it was provided that under this section of the statute, the applicant should submit proof satisfactory to the Administrator of Veterans' Affairs, showing that he was not totally and permanently disabled. Furthermore, he was required to pay back all monthly premiums which would have become payable if the insurance had not lapsed, together with interest on each premium from the date it was due by the terms of the policy. If the applicant was unable to pay such premiums, with interest, on a showing to the Administrator of Veterans' Affairs, the application might be approved and the amount of unpaid premiums, with interest, placed as an interest-bearing indebtedness against the insurance.

The second method of securing reinstatement of a lapsed policy was by compliance with the Regulations of the Veterans' Bureau. These Regulations provided that lapsed insurance, in order to be reinstated, required an applicant to tender one premium payment on the term insurance to be reinstated and converted, and one monthly premium on the insurance. In case more than three calendar months had expired from the date on which the unpaid premium was due, the Regulations further provided that, at the time of his application, the veteran should be in good health, and so state in his application; and

that he should submit a report of a complete medical examination "and such other evidence relative to his physical and mental condition and insurability as may be required by the Director and on such forms as the Director may prescribe." Sections 4110, 4112, Regulation 138 of Regulations and Procedure, United States Veterans' Bureau, page 175.

In 1927, at the time of application for reinstatement, § 200 of the World War Veterans' Act, 44 Stat. 793, 38 U.S.C.A. § 471, providing for compensation for death or disability of members of the armed forces who served in the World War, included the following:

"For the purposes of this Act every such officer, enlisted man, or other member employed in the active service under the War Department or Navy Department who was discharged or who resigned prior to July 2, 1921, and every such officer, enlisted man, or other member employed in the active service under the War Department or Navy Department on or before November 11, 1918, who on or after July 2, 1921, is discharged or resigns, shall be conclusively held and taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, disorders, or infirmities made of record in any manner by proper authorities of the United States at the time of, or prior to, inception of active service."

It is admitted by the Government that this conclusive presumption of sound physical condition or health, in addition to being applicable to § 200 of the Act, was also applicable to § 304 of the Act, see Title 38, § 515, U.S.C.A., above mentioned. Appellant did not proceed under the provisions of the statute which permitted reinstatement without complying with requirements as to physical condition. Instead, he filed his application for reinstatement pursuant to the Regulations, which did require medical examination and the presentation of such other evidence relative to his physical and mental condition and insurability as was required by the Director; and after undergoing such a medical examination, and the filing of a report thereof and the other evidence required as to physical condition, his insurance was reinstated and converted.

In answering the printed questions in the application for reinstatement of insurance, appellant stated that he had never been treated for any disease of the genito-

urinary organs; and in reply to a question of the examining physician, he stated that he had never had syphilis. However, he testified that he believed these questions only referred to the period subsequent to default in payment of insurance premium. In support of this claim, he stated that the other printed questions in the application—as to whether he was in as good health as he was *at the due date of the premium in default,* and whether he had been ill or contracted any disease or consulted a physician in regard to his health *since the lapse of the insurance*—led him to this conclusion. He further testified that he had not consulted a physician or received treatments for syphilis prior to the reinstatement of his policy. He explained that certain statements which he had made in 1933, to the effect that he had consulted a Dr. Smith in Hot Springs, Arkansas, and had received such treatments in 1926, were the result of mistake. With regard thereto, he testified that the actual fact was that he had only been in Hot Springs, Arkansas, once in his life, and that the physician he consulted and from whom he received treatments for syphilis was Dr. Oliver A. Smith, and that the time of such treatments and consultation was in 1930,—which was subsequent to his application for reinstatement. His counsel introduced in evidence, a statement of Dr. Smith that he had so treated appellant in 1930. There was no evidence that any treatments had been given him in 1926, except appellant's own allegedly erroneous statement.

 Whether he had consulted a physician and received treatments from the time of the lapse of his policy until its reinstatement, was a question of fact for the jury, and as such, was properly submitted by the trial court. Had appellant been treated for the disease subsequent to the lapse of the policy and prior to its reinstatement, such fact would bear upon the question of his good health, which was pertinent in any application for reinstatement. Furthermore, whether appellant misunderstood the questions on the application and believed that they related solely to the period between the lapse of his policy and its reinstatement, or whether he knew that they also included the period before his enlistment and had deliberately misrepresented the facts, would ordinarily be a question for the jury also. But it is unnecessary to resolve this latter issue, as it is our conclusion that no inquiry as to

the question of syphilis prior to appellant's enlistment was proper or material.

 Statutory provisions in effect at the time when appellant made application for insurance reinstatement (44 Stat. 793), set forth that "for the purposes of this Act" a member of the armed forces was conclusively presumed to be in sound condition at the time of his enlistment. Such presumption applied whether a veteran sought reinstatement under the express terms of the statute or under the Regulations of the Veterans' Bureau. The making of such Regulations by the Administrator of the Veterans' Bureau was authorized by statute. Title 38, § 426, U.S. C.A. Inasmuch as the statutory presumption was applicable for the purposes of the Act, it was applicable to the Regulations of the Bureau, which were created by virtue of the statute to carry out the purposes of the Act. The fact that the statutory provision as to the presumption was amended in 1930, 46 Stat. 995, and was thereby limited "for the purposes of this section [Title 38, Sec. 471, U.S.C.A.] and section 515 of this title," instead of "for the purposes of this Act," is of no importance in the decision of this case; and we are not called upon to determine whether, under such amendment, the presumption in question would be applicable to the Regulations governing reinstatement of insurance. Appellant's application and the reinstatement, as well as his rights thereunder, are to be judged in the light of the statute as it existed when the transaction took place.

 If, therefore, appellant had syphilis before his enlistment, the statute required, nevertheless, that he be conclusively presumed, at such time, in sound condition. A presumption that appellant was in sound condition at the time of his enlistment, obviously, is a presumption that he was not then afflicted with disease. Nevertheless, he had syphilis at that time. Apparently, the disease was in a quiescent state and was not recognized by the Army medical examiner in 1918. But it is a matter of common knowledge that syphilis pursues its course in a hidden, treacherous way, and that after its first symptoms have disappeared, it often slumbers in the blood stream without further manifestation of its presence during many years, until it suddenly reappears to strike down its unsuspecting victim in disability, insanity, or death.

In the case before us, it appears that, although appellant was treated in 1915 and thought he was cured, the disease continued its unperceived and slow ravages in his body until 19 years later, when its course resulted in insanity. Appellant's present disability results from the continuous disease from which he was suffering at the time of his enlistment. The Government cannot now be heard to say that appellant was afflicted with syphilis at the time of his entry into the armed services and that reinstatement of insurance should be denied because he was then afflicted with the same disease from which he is now suffering. That defense was removed when Congress enacted the statute providing that, for the purposes of the Veterans' Act—which included reinstatement of insurance by virtue of statutory provisions, as well as reinstatement pursuant to Regulations of the Veterans' Bureau as authorized by the Act—a veteran must be conclusively presumed to be in sound health at the time he joined the Army. A requirement that appellant disclose that he was afflicted with syphilis at the time of his enlistment or prior thereto as a basis for denial of his application for reinstatement, was a violation of the presumption that he was not so afflicted; and this conclusive presumption controls, whether reinstatement be under the express provisions of the statute or under regulations authorized by the Act. The statutory presumption, as it existed in 1927, was conclusive for *all* the purposes of the Act.

But it is contended that the inquiry whether appellant ever had syphilis presented the question of the state of his health as of the date of his application for reinstatement. However, it would present such question only by indicating that he had the same disease on the date of such application as he had at the time of his enlistment; and by the presumption of law enacted for his benefit, he was conclusively held to be in sound health at that time. In this case, it could be said that if appellant had been afflicted with syphilis before his enlistment, he was conclusively presumed to have been cured of such disease and in sound health at the time he enlisted.

Investigation of pre-service syphilis in order to ascertain the present state of appellant's health could only be justified on the ground that he was not cured of the disease at the time of his enlistment and was not then in sound health. Such an inquiry and such an assumption, the statute forbids.

It is not surprising that, in interpreting statutes, anomalies of reasoning may result when a conclusive presumption of a state of facts is directly contrary to the admitted facts. However, as evidenced by the contentions of the representative of the Veterans' Bureau and counsel for appellee during the trial, the actuality of the present situation is, not that the Government complains that it was entitled to know of pre-service syphilis as bearing on the health of appellant at the time of application for reinstatement, but that it required such information in order to refuse reinstatement if appellant ever had syphilis, whether before or after his enlistment in the Army. It was in accordance with this contention that the trial court instructed the jury that because the Government had such a right, a misrepresentation that appellant never had syphilis was material, and if knowingly made for the purpose of causing the Government to rely thereon, was fraudulent. The attitude of the Veterans' Administration in the present case seems, however, changed from its earlier views, as in 1927, when the reinstatement here in question was granted, it appears from the evidence that it was the policy of the Administration to reinstate in cases where a past history showed syphilis, if, after treatment, the blood test was negative; and the application for reinstatement in the present case required written answers *by the veteran* as to contracting disease, suffering injury, ill health, or consultation with a physician, *only subsequent to the lapse of insurance.*

The Veterans' Bureau had the right, in passing upon the application for reinstatement, to require a physical examination of appellant and a statement from him that he was in good health, as well as information from him as to any consultation with a physician, or any disability, injury, or disease occurring subsequent to enlistment. These requirements were satisfied by appellant. If fraudulent misrepresentations were made as to any of the foregoing, the reinstatement could be canceled; and whether they were so made by appellant was, from our examination of the record, a question for the jury. But it was error to submit questions as to pre-service syphilis. Any statements made in connection therewith were immaterial, for the Government could not, in law, be misled by them as it could not rely upon them for the purpose of reinstatement.

With regard to the refusal of the trial court to submit proposed written interrogatories to the jury, no error can be predicated thereon, as such submission is discretionary with the court under the rules which control such practice. See Rule 49, Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c; Moore's Federal Practice, Vol. 3, pages 3095–3098. Other complaints concerning the trial court's instructions as to presumption of fraud and weight of the evidence, are without merit. In order to sustain his cause of action under the pleadings and proof, appellant was required to show total permanent disability only subsequent to 1939.

In accordance with the foregoing, the judgment is reversed, with direction to award appellant a new trial.