MARCUS LOEW BOOKING AGENCY v.
PRINCESS PAT, Limited, et al.
No. 8403.

Circuit Court of Appeals, Seventh Circuit.
March 3, 1944.

Sylvanus George Lee, of Chicago, Ill., for appellants.

Isaac E. Ferguson and Morton Lane, both of Chicago, Ill., for appellee.

Before EVANS and MINTON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

From separate judgments against them, defendants appeal, urging error in denial of (1) their motion for a directed verdict, (2) defendant Princess Pat's motion for a directed verdict on its counterclaim, and (3) their motions for judgment notwithstanding the verdict. These averments of error question primarily the sufficiency of the evidence to justify submission to the jury or to sustain the verdict and the correctness of certain rulings in the course of the trial.

Defendants' contentions upon the facts center largely upon whether plaintiff failed to perform substantially its contract with defendants or willfully broke it by interjecting into broadcasting periods advertising Princess Pat's products, announcements of horse racing events. The latter alternative constituted the defense offered to the complaint and the basis for that defendants' counterclaim. There was no controversy as to existence of a valid contract for broadcasting, or as to the fact that, in at least some of the periods, interrupting flash announcements were made. There was, however, a sharp dispute as to whether defendants knew of the breach by plaintiff as early as two days after the contract went into effect, failed to object, permitted the same to proceed without protest and, with knowledge of the fact, paid the bills for broadcasting for the first five weeks as they matured. Plaintiff's evidence supported the affirmative and defendants' the negative.

■ Where the preponderance lay is not a question for this court. It is too late to make inquiry into sharply controverted matters of fact. Only the jury could determine where the truth lay. It follows that it is unnecessary to consider the legal question of whether certain admitted acts constituted a willful breach of contract for which plaintiff is legally liable, for the verdict effectively established defendants' waiver of any breach urged.

■ Defendants claimed also defective performance in shortage of time, in unauthorized change of theme songs, manner of broadcasting and various other elements. But whether these events occurred or anything happened of such character as to negative substantial performance were also questions of fact upon which the verdict is conclusive.

■ Complaint is made of the charge. In one portion, in defining the issue, the court advised the jury that defendants contended that there had been no substantial performance of the contract for the rea-

son "that during the fifteen minute daily period of broadcasting, it was interrupted by other matters which were injurious to her product." Inasmuch as the executive officers of the two defendant corporations had testified that they considered the interruptions harmful to the product or to its advertisement, we think the court did not mislead the jury as to the issue presented. This becomes evident when we consider all parts of the charge. Amongst other things, the court informed the jurors that it was for them to determine whether the interruptions constituted substantial deviations from the contract or amounted to substantial failure by plaintiff to perform its contract; that if the jury should determine that the deviations complained of were of such serious nature that plaintiff had failed to perform substantially the service it had agreed to perform, then plaintiff could not recover, unless the jury should find also that defendant knew, at or about the time plaintiff commenced to perform, that plaintiff was making the deviations and consented thereto; but that if the jury should find that defendants did consent to and knowingly permit the deviations then plaintiff would be entitled to recover. The court further charged that plaintiff was bound to prove substantial performance, in good faith, before it could succeed.

■ Defendants insist also that the court erred in instructing the jury that if defendant Princess Pat made payments to plaintiff after learning of the racing announcements, it had waived performance and was not entitled to recover on its counterclaim. Again the entire charge must be considered. In this, as indicated, the court fully advised the jury as to the exact issues and explained fully the facts necessary to constitute a waiver of performance. Taken as a whole the charge correctly advised the jury of the true issues entrusted to it for its decision.

■ Having so instructed the jury, the court did not err in refusing to submit the suggested written interrogatories requested by defendants. Rule 49(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, is permissive, not mandatory, and whether the court will submit special interrogatories is within its sound discretion. If the charge comprehensively covers all issues there is no abuse of discretion in a denial. Dallas Railway & Terminal Co. v. Sullivan, 5 Cir., 108 F.2d 581; Van Pelt v. United States, 6 Cir., 134 F.2d 735; Moyer v. Aetna Life Ins. Co., 3 Cir., 126 F.2d 141.

■ It was not error to exclude testimony of Mrs. Gordon that she did not know of an existing contract between plaintiff and a third party for the flash announcements of horse races. Whether she knew of the agreement was wholly immaterial. The important and material fact was that the interruptions occurred, and, as to this, there was no dispute. The ultimate inquiry resolved itself into the jury question of whether defendant had condoned the interruptions. The proffered testimony was irrelevant and immaterial.

■ The sufficiency of the evidence to support the verdict against Frank R. Steel Associates, Inc., is challenged. This defendant, an advertising agency, after the contract between Princess Pat and plaintiff had been executed, entered into another with radio station WHN reciting that it was placed with the station "covering the radio broadcasting of (its) client, Princess Pat Ltd.," and fixing the time, amount and cost of the broadcasting. It was silent as to any promise upon the part of Steel to make payment. Thus, it is obvious that not only had an express contract been entered into between the two principals but that this supplemental contract, made not with plaintiff but with a third person, was executed solely in behalf of the principal, containing no promise by the agent to pay. Consequently the contract was that of the principal and not of the agent. Williston on Contracts, Rev.Ed.1936, Vol. 1, p. 826; 3 Corpus Juris Secundum, Agency, p. 119, § 215a; Restatement of the Law of Agency, §§ 155 and 320.

■ True, an agent may bind himself; the person with whom he deals may be unwilling to trust the principal and yet willing to accept the promise of the agent. But the contract must disclose that the agent has substituted his own responsibility for that of his principal or has pledged his own responsibility in addition to that of the principal. Obviously, he is not liable merely because of his agency but solely because of his own contractual obligations. Inasmuch as there is nothing in the agreement in the way of a promise by defendant, Steel Associates, to pay or to substitute its liability for that of its principal or to supplement the principal's liability with its own promise, the record did not justify submission of the complaint against

it to the jury. Its motion for a directed verdict or that for judgment notwithstanding the verdict should have been allowed.

The judgment against Frank R. Steel Associates, Inc., is reversed; that against Princess Pat, Ltd., affirmed. Plaintiff will pay all costs incurred here and in the District Court by Steel Associates and defendant Princess Pat all other costs.

EVANS, Circuit Judge (dissenting).

My difference with the majority opinion as to appellant, Princess Pat, Ltd., arises out of the clause in paragraph 8 of the contract, which reads:

"Station reserves the right to devote part or all the time allotted to the Advertiser for the purpose of broadcasting events it deems of special importance or interest."

Applying the rule of construction *"expressio unius est exclusio alterius"* I assume the particularization of this exception excludes all other right of plaintiff to interrupt Princess Pat's use of the time which it purchased. It follows therefore that plaintiff must justify its use of defendant's time on the sole ground that it was broadcasting events "of special importance or interest." Did the announcements of the outcome of "horse racing" and "betting odds" fall within that provision? The court left the question to the jury and instructed,—

"You will determine from all of the evidence in the case whether the matter that was interjected might reasonably be deemed by the plaintiff to be matters of public interest or importance. If you believe from all the evidence in the case that the plaintiff might reasonably deem these racing results to be matters of public interest and importance, then it had the right under the terms of the contract, to make announcements of the racing results during the time allotted to the defendants in this case."

In my opinion that instruction was erroneous. The court should have said that an announcement of a horse race and the betting odds on horse races were not of *"special importance or interest"* as that term was used in this contract.

Plaintiff made a secret commercial contract with the William Armstrong Publishing Company and was regularly paid for that company's right to broadcast such horse race, betting information. This, it seems to me, conclusively negatives the idea that the outcome of horse races and betting results could be *"deemed of special importance or interest."*

If the company selling betting odds information on horse races had a contract to use plaintiff's broadcasting facilities, with which to reach the gambling fraternity, hourly, *every day,* it could not be said to be "special." If regularly repeated each day over the radio, whence comes the "special," to say nothing of the words "importance or interest"? I would think only "out of the ordinary" was special. That which was daily routine, was not special. In the radio field, I would say special war news, deaths of important characters, and like matters—were special.

A jury might even say that reports of the outcome of great athletic events—like the World Series baseball games, the account of the famous Derby races—were of special importance or interest. Whether such events were of special importance, would present a jury question, in my opinion. But it's a far cry from such announcements to the advertisements of publishers of racing sheets which tell the gamblers of the amounts of their winnings in so-called horse races. These races are daily occurrences. Emphasis is not on the horse. It's the outcome of a bet. The publisher of the racing sheets is broadcasting his advertisements in order to keep up interest in gambling results, that he may sell more racing sheets.

If the interruptions, here in question, were to describe horse races as they are run every day, they would not be announcements of special importance or interest. But we are here dealing with even less important matters, namely, announcements which relate to betting odds or winnings of race No. 1, 2 or 3 at Track T., etc. We are dealing with advertisements to aid in the sale of racing sheets on horse races, to a gambling fraternity, in order that interest in gambling may be maintained or heightened.

Nor, in my opinion do the interruptions present a jury question as to whether they were of special importance or interest.

If the verdict were not a general one, plaintiff might still prevail. For recovery is here possible because the jury might have found the breach was not substantial or because defendant waived the breach. That possibility, however, is not before us, because a general verdict makes it impossible for us to say upon what ground the

jury found for plaintiff. It may have been, under the instructions, upon the ground that the interruptions were of "special interest or importance." Reversal is necessitated because on this material issue the jury was improperly instructed, and we cannot say that it was not decisive of the case.