Archie Anderson, Appellee, v. Frank Krancic, Appellant.

**Gen. No. 10,041.**

Opinion filed March 8, 1946.
Rehearing denied May 7, 1946.  Released for publication May 9, 1946.

HIBBS & POOL, of Ottawa, for appellant.

JOHN H. ARMSTRONG, of Ottawa, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

This is an appeal from a judgment in favor of the plaintiff, Archie Anderson, against the defendant, Frank Krancic, for personal injuries he sustained, and damage to his automobile, resulting from the collision of his automobile and a truck, operated by the defendant, at a highway intersection near the town of Wedron on the morning of July 11, 1942.

The east and west road on which the plaintiff was driving his automobile west, crossed a north and south road on which the defendant was driving the truck north, toward the intersection.

The complaint has four counts the charging parts of which are substantially as follows: Count one alleges that while the plaintiff, in the exercise of due care, was driving his automobile in a westerly direction along the east and west highway; that the defendant in a careless, negligent and unskilful manner so operated his truck in a northerly and westerly direction into the intersection, or through the same, that he collided with plaintiff's automobile.

Count two alleges due care of the plaintiff while driving his automobile in a westerly direction on the highway; that the defendant failed to be on the lookout and observe traffic on the road on which plaintiff was driving, and to exercise ordinary care driving into or through the intersection, whereby plaintiff was injured and his automobile damaged.

Count four is similar to count two except that it charges that the defendant drove to, into and through the intersection without giving the plaintiff the right of way, contrary to sec. 68, art. IX of the Uniform

Act regulating traffic on highways [Ill. Rev. Stat. 1945, ch. 95½, par. 165; Jones Ill. Stats. Ann. 85.197].

Count three alleges due care on the part of the plaintiff while driving his car in a westerly direction on said east and west highway; that as he was passing through the intersection, the defendant carelessly, negligently and unskilfully so managed and operated the truck in a northerly direction to, into and through the intersection at a high and excessive rate of speed, to-wit, upwards of 40 miles per hour, which was unreasonable and improper in regard to the traffic and use of the way, and contrary to sec. 49 of art. IV (of the aforesaid act). The answer of the defendant denies the plaintiff's allegations of due care and the defendant's acts of negligence set forth in each count.

At the close of the plaintiff's evidence and again at the close of all the evidence, the defendant submitted motions for a directed verdict in his favor under each count. The defendant contended that the evidence does not tend to prove that the plaintiff was in the exercise of due care as alleged in his complaint. The motions were denied, the issues were submitted to a jury and there was a verdict and judgment for the plaintiff for $2,500.

The defendant filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial in the event motion for judgment was denied. Motion for judgment notwithstanding the verdict was denied; motion for new trial was denied.

It is assigned as error that the court erred denying the motion for judgment notwithstanding the verdict because there is no evidence tending to prove the allegations of the complaint that the plaintiff was in the exercise of due care; also, that the court erred denying the motion for a new trial because the manifest weight of the evidence is that the plaintiff was not in the exercise of due care as alleged in his complaint.

■ ▪ The evidence in the case is conflicting on the question of the position of the vehicles relative to the intersection at the time of the collision. The plaintiff testified that the defendant drove from the south into the intersection about 10 or 12 feet west of the west line of the intersection, and struck his automobile. The defendant testified that he entered the intersection from the south, drove the front wheels of the truck to the north boundary of the intersection, then backed the truck into the intersection to make a left turn toward the west and the plaintiff drove his car against the truck. It is a well settled rule that the verdict must respond to the issues, and a verdict pursuant to evidence tending to support a different theory of the cause of action from that presented in the pleadings cannot stand. (64 C. J., p. 1074, sec. 879.) The verdict in this case cannot stand on any negligence, if any, resulting from the backing of the truck by the defendant into the intersection, if he did so.

The evidence consists of the testimony of the parties and the witness, Elmo Wilson, who testified on behalf of the plaintiff. Photographs were introduced in evidence showing the right fenders of both cars damaged by the impact. Soybeans were growing in the field at the southeast corner of the intersection, and each driver could see the vehicle of the other, as the cars were being driven toward the intersection.

It appears from the evidence that each of the highways in question was 42 feet wide from fence line to fence line and gravelled in the middle to a width of from 18 to 22 feet. There was no sign at the intersection limiting traffic. It was a clear day, the roadways were dry and vehicles moving on the highways raised dust from the gravel. For 18 months before the accident, the plaintiff had been working in the town of Wedron which lies west of the intersection. The plaintiff knew that trucks loaded with cement were being driven from Wedron eastward toward the inter-

section and there turning south toward highway number 71, which was then under construction, and that the empty trucks returned to Wedron by the same route. The plaintiff left his home to go to work in Wedron about 6:30 o'clock a. m. on the day of the accident. He was driving his Chevrolet passenger automobile about 25 to 30 miles an hour as he approached the intersection from the east. As he approached the intersection, the defendant was driving his son's Ford truck north toward the intersection, following another truck which was also on the way to Wedron to be loaded with cement for construction work on highway 71. The defendant, according to his testimony, took his son's place that morning hauling cement and he did not know the way from highway 71 to Wedron; that his employer had directed him to follow the other empty truck on the trip to Wedron. The defendant admitted that he could not keep up with the leading truck before he reached the intersection, and that he was driving fast. Also, that he did not see the automobile of the plaintiff as it neared the intersection from his right.

On the question of his due care, the plaintiff testified that when he was 40 or 50 feet from the intersection, he took a quick look to his left and saw a cloud of dust, but that he did not see the truck of the defendant; that he looked to his right, and he did not see anything preventing him from passing through the intersection; that if there was a truck coming from the south on the north and south highway, it would be within his vision 8, 10 or 15 rods south of the intersection. The dust was 8 or 10 rods south of the intersection when he saw it.

The truck which the defendant was attempting to follow, had turned west at the intersection into the road leading to Wedron before the plaintiff reached the intersection. The plaintiff further testified in substance as follows: When I was within 20 or 30 rods

from the intersection, I was looking straight ahead. As I came down the road, I saw that truck turn the corner. I was then 20 or 30 rods from the intersection. I had no difficulty seeing the truck, when I was 20 or 30 rods from it; I was looking west at the truck. I kept looking west until I was within 40 or 50 feet from the intersection. I guess the first time I looked to the southwest was when I was 40 or 50 feet from the intersection. I saw the dust and paid no more attention to it. I had plenty of room to go through the intersection. Both the north and south roads are about 40 feet wide. I did not see the defendant's truck as it approached the intersection. I do not know if the dust prevented me from seeing the truck. The collision was 10 or 12 feet west of the west line of the north and south highway. I do not know if that truck came around the corner; where it came from, I personally do not know. The first time I saw the defendant's truck was when my car and his truck collided. I was in the west half of the intersection when Krancic's truck came around the corner and crammed into my left front fender, throwing me out of the seat up in the air.

Elmo Wilson testified that he was driving toward Wedron and about 75 feet to the rear of the plaintiff's car before the accident. That he heard the defendant's truck coming from the south, but that he did not see it moving toward the intersection. That the plaintiff's car was just past the intersection when the truck of the defendant struck the car. That from a point on the east and west highway 60 rods east of the intersection, a truck or automobile could be seen coming from the south on the north and south highway toward the intersection. That in the morning at the time of the accident, the north and south road is not used much for traffic, only by trucks.

Defendant's motions for a directed verdict and for judgment notwithstanding the verdict, have

the same effect and present only a question of law as to whether there is a total failure or lack of evidence to prove any necessary element of the plaintiff's case. (*Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300.) While the burden of proof is always on the plaintiff, in proceedings of this kind to show that when the injury was received he was in the exercise of ordinary care, that question is one of fact, which must be determined by the circumstances attending and surrounding the injury. Whether the evidence tends to prove such care is a question of law. A court can only determine adversely to the plaintiff when no other conclusion can be reasonably drawn from the uncontradicted facts and from the evidence that is favorable to the plaintiff. *Pienta v. Chicago City Ry. Co.*, 284 Ill. 246, 251. If there is evidence which, standing alone, tends to prove the material allegations of the complaint, a motion for a directed verdict, or for judgment notwithstanding the verdict, should be denied. (*Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300.)

Whether the plaintiff in this case exercised due care and caution for his own safety, was a question of fact for the jury unless his conduct was so clearly and palpably negligent, that all reasonable minds would agree that he did not exercise that degree of care and caution which reasonable, ordinary and prudent persons would exercise under the same circumstances surrounding and attending his injury. (*Reidel v. Camp*, 311 Ill. App. 656.)

We do not find that the rule requiring a traveller who is about to cross in front of a moving vehicle must be on the lookout for that vehicle, has been so rigidly applied by our Supreme Court that the failure to look is negligence *per se* under all circumstances.

In the case of *Winn v. Cleveland, C., C. & St. L. Ry. Co.*, 239 Ill. 132, page 139, it is stated: "This court has repeatedly held that a traveller approaching

a railroad crossing is required to use such care as a person of ordinary prudence would exercise under the same circumstances, and this ordinarily demands the use of the faculties of sight and hearing to discover whether a train is approaching or not, but it cannot be said, as a matter of law, that the failure to look or listen under all circumstances will bar a recovery. It is usually a question of fact for the jury to determine, in view of all the surrounding circumstances, whether the failure to look and listen constitutes negligence or lack of due care." Citing cases including *Chicago & A. R. Co. v. Pearson,* 184 Ill. 386. In the *Winn* case the court continued as follows: "*In Chicago, St. Louis and Pittsburg Railroad Co. v. Hutchinson,* 120 Ill. 587, it was held that the degree of care required cannot be formulated into a particular rule of conduct, for the reason that the conduct of ordinary cautious and prudent men will vary with the varying circumstances." To the same effect is *Partlow v. Illinois Cent. R. Co.,* 150 Ill. 321; *Chicago & N. W. Ry. Co. v. Dunleavy,* 129 Ill. 132.

In the case of *Heidenreich v. Bremner,* 260 Ill. 439, it is held that the failure of a person to look for approaching vehicles before starting to cross a street at a public crossing is not necessarily negligence *per se* under all circumstances. The court in that case states as follows: "It has long been the settled rule in this jurisdiction that it cannot be said, as a matter of law, that a person is in fault in failing to look and listen if misled without his fault or where the surroundings may excuse such failure." (*Chicago & A. R. Co. v. Pearson,* 184 Ill. 386; *Graham v. Hagmann,* 270 Ill. 252, and *Morrison v. Flowers,* 308 Ill. 189.)

The case of *Moran v. Gatz,* 390 Ill. 478, reverses the judgment of the Appellate Court finding the plaintiff guilty of negligence as a matter of law. The plaintiff in that case stepped off the curb at a crosswalk where she had the right of way over the defendant's automo-

bile as it approached the crosswalk. In that case it is stated: "The Appellate Court held that appellant must be held to have seen—what she could have readily seen, had she looked,—i.e., appellee's approaching car and having ignored it, and continued in a normal walk, placed herself in the path of appellee's car, and this was contributory negligence on her part as a matter of law. The errors assigned are, that the Appellate Court erred in construction of the right of way statute in determining whether appellant exercised due care, and in holding in effect that a pedestrian crossing an intersection on a crosswalk has no right to presume that a motorist will accord him the right of way."

In the *Moran* case the Supreme Court says, "In *Adler v. Martin,* 179 Ala. 97, 59 So. 597, it was declared that whether a pedestrian is guilty of negligence per se in failing to look up and down a street for approaching vehicles before attempting to cross, or whether such failure is negligence at all, is a question for the jury on the particular facts in each case."

In the present case the plaintiff had the benefit of the assurance that the defendant would yield the right of way to him. (*Moran v. Gatz,* 390 Ill. 478.) This assurance was a material element of the case to be considered by the jury.

In the *Moran* case it is further stated: "The general accepted rule is that while a statute such as ours gives pedestrians the right of way, it does not confer upon them an advantage which necessarily absolves them from guilt of contributory negligence. Each case must be determined from its particular facts. The question of contributory negligence is one which is pre-eminently for the consideration of a jury. It cannot be defined in exact terms and unless it can be said that the failure of the plaintiff to look again was so palpably contrary to the conduct of a reasonably prudent person as to show contributory negligence, the issue is one for the jury. (*Blumb v. Getz,* 366 Ill. 273.)

Whether failure to look was shown and constituted, in this case, want of due care, was an issue of fact for the jury. *Morrison v. Flowers,* 308 Ill. 189. The rule seems to be quite universal that a pedestrian's failure to keep a constant lookout, or to look again after having determined that he can safely cross ahead of the approaching traffic, is not contributory negligence as a matter of law, but it is a question for a jury whether he was in the exercise of ordinary care for his own safety."

The plaintiff in this case testified that he was driving his automobile about 25 to 30 miles an hour as he drove it toward the intersection; that when he was about 40 or 50 feet from the intersection he took a quick look to his left toward the north and south highway and he saw a cloud of dust which was 128 or 160 feet from the intersection; that as he drove toward the intersection, he was watching a truck which had turned west from the north and south road at the intersection. Whether the plaintiff should have looked again, or whether he did not use care assuming that a vehicle approaching the intersection on his left would give him the right of way, were questions of facts to be taken into consideration by the jury in determining whether the plaintiff was, at the time, in the exercise of due care for his own safety. Under authorities cited, the failure of the plaintiff to keep a constant lookout, or to look again after determining that he could safely cross ahead of approaching traffic, was an issue which was properly submitted to the jury. The court did not err in denying the motion for judgment notwithstanding the verdict, and denying the motion for a new trial.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*