## MEAD v. COCHRAN.

### No. 10141.

United States Court of Appeals
Seventh Circuit.

Oct. 18, 1950.

Rehearing Denied Nov. 10, 1950.

James L. Reed, Edwardsville, Ill., Earl S. Hodges, Springfield, Ill. (Maurice W. Kepner, Springfield, Ill., of counsel), for appellant.

L. C. Combe, Greenville, Ill., Frederick G. Apt, Iola, Kan., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

This is an action for wrongful death brought by the plaintiff as administrator of the estate of his wife, Pearl Mead, as a result of an automobile collision. Plaintiff also sues for his individual injuries and property damage. The issues were tried to a jury which rendered a verdict favorable to plaintiff. Judgment was rendered on such verdict, and defendant appeals, alleging as error (1) failure to grant defendant's motion for a directed verdict; (2) failure to submit to the jury defendant's tendered interrogatory on the question of contributory negligence; (3) rulings on evidence; and (4) failure to grant defendant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

On May 2, 1948, at about 2:00 P.M. plaintiff, accompanied by his wife, was driving his automobile near Pocahontas, Illinois, in a northeasterly direction on what is known as new U.S. Highway 40. This is a through or arterial highway, the concrete slab of which is 22 ft. in width, and is protected at crossing intersections by stop signs. At said time and place, defendant, 88 years of age, accompanied by his wife and 86-year-old brother, was driving his automobile on old Route 40, which intersects new Route 40 at a 30° angle. Stop signs on the old route directed drivers of motor vehicles and other traffic to stop before entering or crossing new Route 40. Just before old Route 40 intersects the new highway, it is built at a lower level in the Shoal Creek Bottom where numerous bushes and trees at the roadside were in full leaf at the time in question. The weather was bright and clear. All witnesses had reasonably good vision. The defendant, however, was somewhat hard of hearing.

Plaintiff's car, which for some distance had been following the car in which a Mr. and Mrs. Lindwood Leever were traveling, passed the Leever car about one mile west of the scene of the collision and proceeded along new Route 40 at a speed of approximately 50 miles per hour. Plaintiff testified he was driving on the right side of the pavement and that he was looking straight ahead, watching the road, and that when his car was within 50 ft. of the intersection with old Route 40, defendant's car, which had been at a standstill, suddenly moved onto and partly across the concrete pavement of new Route 40. The plaintiff sounded his horn, applied his brakes, and swerved his car to the right and onto the shoulder, and almost avoided colliding with defendant's car, but the right front bumper thereof struck the rear left wheel of plaintiff's car, causing the left rear tire on plaintiff's car to blow out and his car to overturn, as a result of which his wife was killed and plaintiff received serious injuries.

Although there were differences in the testimony as to the speed at which each automobile was proceeding, Mr. and Mrs. Leever, who were disinterested witnesses, and who were proceeding in the same direction, estimated the plaintiff's speed at about 50 miles per hour until shortly before the collision. Taking the testimony most favorable to the plaintiff, we shall consider that the speed of plaintiff's car was as testified to by the Leevers, and that defendant's car shortly after it started up was traveling at 10 to 18 miles per hour and had proceeded far enough so that it had crossed the black stripe in the center of new Route 40. Lindwood Leever described the manner in which defendant's car was handled, by saying that he saw it "shoot out" onto the highway.

Defendant's principal contention is that plaintiff was guilty of contributory negligence as a matter of law. Defendant cites plaintiff's testimony that he was watching the road straight ahead and was not looking to his left. Defendant reasons that had plaintiff looked to his left he would have seen defendant's automobile and could

have taken some precautions to avoid a collision.

Plaintiff was traveling on a long straight stretch of an arterial highway in a rural area. It was guarded at the intersection of old Route 40 with stop signs. A driver of a motor vehicle on old Route 40 approaching the arterial was governed by the section of the Illinois statutes providing, "* * * vehicles entering upon or crossing such highway shall come to a full stop as near the right-of-way line of such highway as possible and regardless of direction shall give the right-of-way to vehicles upon such highway." Smith-Hurd Anno. Stats. Ch. 95½, Sec. 167.

Furthermore, plaintiff did testify that he looked to his left about 100 ft. from the intersection, and that before reaching that point there were trees and bushes on his left along old Route 40 which obstructed his view. Under the circumstances it might well be that defendant's stationary car did not make a permanent mental impression upon the plaintiff. Defendant's automobile had been at a standstill at some point within 15 to 23 ft. distant from the pavement of new Route 40. Defendant suddenly started his automobile in motion, intending to cross the center line of new Route 40 and then swing to his left in order to proceed along it in a northeasterly direction. Defendant did not see the plaintiff's car nor the Leever car behind it. As plaintiff was only 45 to 50 ft. distant when the front of defendant's car reached the pavement, there wasn't much that he could have done other than blow the horn, apply the brakes, and swing to his right onto the shoulder of the highway. The only damage done to defendant's car was the right portion of the front bumper was torn off. No-one in that car was injured. However, it was the blowing of the left rear tire on plaintiff's car that was largely responsible for his automobile going out of control.

■ Under the facts of this case we believe that the question of contributory negligence was a question of fact for the jury. In Kinser v. Riss & Co., Inc., 7 Cir., 177 F.2d 316, 319, a case in which this court applied the law of Illinois, we said: "Con-

tributory negligence is ordinarily and pre-eminently a question of fact to be decided by a jury, and it becomes a question of law only when it can be said that all reasonable minds would reach the conclusion, under a particular factual situation, that the facts did not establish due care and caution on the part of the person charged therewith. Briske v. Village of Burnham, 379 Ill. 193, 201, 39 N.E.2d 976. A test as to whether a plaintiff has exercised ordinary care for his own safety at and prior to the time of his injury, is whether or not he acted as a reasonably prudent man would act under the circumstances. Stack v. East St. Louis & S. Ry. Co., 245 Ill. 308, 92 N.E. 241, 137 Am.St.Rep. 318."

In the case of Anderson v. Krancic, 328 Ill.App. 364, 66 N.E.2d 316, the court held that the question of contributory negligence should have been submitted to the jury. There the plaintiff had approached an intersection from the right and, under Smith-Hurd Ill.Ann.Stats.Ch. 95½, Sec. 165, was entitled to the right of way.

In Wallace v. Parnell, 306 Ill.App. 310, 28 N.E.2d 569, 570, the court said: "The question of contributory negligence is one which is pre-eminently a fact for the consideration of the jury. In Thomas v. Buchanan, 357 Ill. 270, 192 N.E. 215, 218, the Court said, 'The question of due care on the part of the plaintiff's intestate is always a question of fact to be submitted to a jury whenever there is any evidence in the record which, with any legitimate inference that may reasonably and legally be drawn therefrom, tends to show the exercise of due care on the part of the deceased.' * * *"

We are not unmindful of the language used by this court in Hoff v. Donaldson, 7 Cir., 184 F.2d 419. However, that case is clearly distinguishable. There the defendant was entitled to the right of way at the intersection, and we held that plaintiff's failure to yield the same under the facts of that case constituted contributory negligence as a matter of law.

■ Defendant requested the court to submit to the jury a special interrogatory inquiring whether plaintiff was guilty of contributory negligence. The court declin-

ed to do so, submitting the issues on a general verdict. Under Rule 49(b), Federal Rules of Civil Procedure, 28 U.S.C.A., it is discretionary for the court to submit with a general verdict written interrogatories upon one or more issues of fact, the decision of which is necessary to a verdict. This court held in Marcus Loew Booking Agency v. Princess Pat, Ltd., et al., 141 F.2d 152, that where the trial court had correctly advised the jury of the true issues entrusted to its decision, it did not abuse its discretion in declining to submit the interrogatories requested by defendants. In the case at bar the jury was correctly instructed as to the question of contributory negligence by the plaintiff. In fact at the suggestion of defendant the court repeated and enlarged upon the instruction covering the question of contributory negligence. The court's denial of defendant's motion was not error.

██ The defendant urges error in the admission of certain testimony of Dr. Robert Holcombe, claiming that in certain respects it was speculative. Rule 61, Federal Rules of Civil Procedure, provides that error in the admission of evidence is not ground for disturbing a verdict or a judgment unless it is inconsistent with substantial justice. Here the trial court believed that the verdict was not excessive, and we are in accord. In fact in his answer defendant denied only the proximate cause of plaintiff's injuries, rather than putting in issue their extent and permanency. We feel that if there were error, it was harmless error under Rule 61.

We invite attention to a violation of Rule 14(d) of this court, which prohibits unnecessary or repetitious printing. Twenty-seven pages of the printed transcript of the record are used to set forth facsimile reproductions of 40 receipted doctor bills and 4 receipted hospital bills, 32 of which are for less than $4 each. Except for one hospital bill and one doctor bill, which were itemized, none of the bills or receipts imparts any knowledge except that on a certain date Mr. Mead paid one of the doctors who attended him for medical services. The cost of printing these pages in the transcript was approximately $121.50.

On this appeal neither the amount paid by plaintiff for doctor or hospital bills nor their reasonableness in amount is questioned. Printing even a copy of said exhibits in the record, to say nothing of making and printing photographic reproductions thereof, is unjustified. Were the appellant to prevail upon this appeal, we would not permit him to tax the printing bill of the transcript as part of the costs.

This case is an excellent example of one in which a pre-trial conference could have been utilized to save time for all concerned at the trial. Had such a conference been held, the parties undoubtedly would have stipulated the content, the amount, and the reasonableness of the medical and hospital bills, as well as agreeing to admit certain X-rays and photographs, and the map which was drawn by the engineer. A number of judges who have with indifference or even reluctance adopted the practice of holding pre-trial conferences are now convinced that the time spent on them is time saved at the trial, multiplied many times.

Finding no prejudicial error in the record before us, the judgment of the district court is

Affirmed.